Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/27/2023 08:04 AM CDT

State of Nebraska, appellee, v.
Forrest R. Cox III, appellant.

___ N.W.2d ___

Filed April 27, 2023.    No. S-22-542.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Right to Counsel: Appeal and Error.** An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.

3. **Postconviction: Constitutional Law: Judgments: Proof.** Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable.

4. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

5. **____: ____: ____.** The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution.

6. **Postconviction: Pleadings.** The allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified.

7. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

8. **Constitutional Law: Effectiveness of Counsel.** A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial.

9. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.

10. **Effectiveness of Counsel: Presumptions: Proof.** The two prongs of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

11. **Effectiveness of Counsel: Proof: Words and Phrases: Appeal and Error.** To show prejudice under the prejudice component of the test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome.

12. **Postconviction.** In a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing.

13. ____. Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists.

14. **Effectiveness of Counsel: Jury Instructions.** Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.

15. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to

sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

16. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

17. **Postconviction: Constitutional Law.** A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act.

18. **Postconviction: Evidence.** The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process.

19. **Postconviction: Evidence: Presumptions: Proof.** The threshold to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high. Such a petitioner must make a strong demonstration of actual innocence because after a fair trial and conviction, the presumption of innocence vanishes.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Forrest R. Cox III, pro se.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Forrest R. Cox III appeals the order of the district court for Douglas County which denied his motion for postconviction relief without an evidentiary hearing. Cox, who is serving consecutive sentences for three convictions, including

a life sentence for first degree murder, set forth claims of ineffective assistance of counsel both at trial and on direct appeal. The district court determined that all of Cox's claims were either insufficiently pled or affirmatively refuted by the record, and it therefore denied his motion for postconviction relief without an evidentiary hearing. Although our reasoning differs somewhat from that of the district court, we affirm.

## II. STATEMENT OF FACTS

Cox was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. The charges arose from a shooting in the parking lot of a convenience store in Omaha, Nebraska, on March 6, 2017. The victim of the shooting, Laron Rogers, died of his injuries on March 22. The district court sentenced Cox to imprisonment for life for the murder conviction, for 25 to 30 years for the use conviction, and for 40 to 45 years for the possession conviction; the court ordered the sentences to be served consecutively.

In Cox's direct appeal, *State v. Cox*, 307 Neb. 762, 763-66, 985 N.W.2d 395, 397-99 (2020), we set forth the evidence in this case as follows:

> According to testimony and evidence presented at trial, an employee of the convenience store called emergency services upon learning of a shooting in the parking lot of the store. Rogers was lying on the ground. Rogers was initially stabilized and taken to a hospital, but he did not respond to questions about who had shot him.
>
> Two different witnesses at the scene of the shooting testified that Rogers was leaning into a white vehicle without license plates, which vehicle was identified by both witnesses as a Chevy Impala. According to the witnesses, it appeared that Rogers was talking to the occupants of the vehicle. A gunshot was heard, and Rogers walked a few steps before collapsing. The witnesses both testified that the white Impala then drove off.

Law enforcement later obtained surveillance video from the scene and confirmed that the suspect vehicle was a white Impala.

During the course of the investigation, law enforcement visited Rogers' place of employment, a cell phone store, and spoke with the store manager. The manager showed law enforcement video clips that were taken earlier on the day of Rogers' shooting. The video clips showed two men inside the store. According to the manager, coworkers had seen Rogers outside the store interacting with the men prior to the men entering the store. Law enforcement was able to identify Cox at the time the clips were viewed. Shortly thereafter, the other man was identified as Rufus Dennis.

The manager provided law enforcement with a piece of paper with "Bubba" and the phone number ". . . 6473" written on it. According to one of Rogers' coworkers, the phone number on the piece of paper was the phone number provided by Cox as he sought assistance with his cell phone at the store. Other evidence at trial revealed that Cox's nickname was "Bubba."

That same coworker also testified that Rogers left work at approximately 6 p.m. but stayed in the parking lot, sitting in his car with a friend. The friend was a manager at a different branch of the same cell phone company that employed Rogers. She had stopped by to pick up phones for her store and stayed to smoke marijuana and talk with Rogers in his car after he got off work. The friend testified that Rogers smoked and dealt marijuana.

According to the friend, while she was in Rogers' car, two men in a white Chevy Impala, with no license plates and displaying in-transit stickers, parked at the store. One of the men—whom she identified at trial as Cox—stopped at Rogers' car to talk to Rogers. The friend said that Cox wanted to buy some marijuana, but that Rogers did not have enough on hand. Rogers and Cox

exchanged telephone numbers and agreed to be in touch later that day. Cox and the other man, unknown to the friend but later identified as Dennis, went into the store; the friend and Rogers left the store's parking lot in their separate vehicles.

During the course of the investigation, law enforcement determined that Rogers owed his drug supplier money. Both Rogers' fellow employee and Rogers' friend testified that Rogers had asked them for money, though both declined to give him any. After leaving work, Rogers went to the home he shared with his mother and father. He asked his father for money and received $200. In addition, bank records show that Rogers withdrew nearly $950 from his bank accounts on the day of the shooting. That money was not recovered.

After identifying Cox and obtaining the paper with the phone number on it, law enforcement sought subscriber information for that number. A warrant was issued, and the cell phone records from January 1 to March 24, 2017, including cell site location information (CSLI), were provided to law enforcement. In addition, law enforcement had access to Rogers' cell phone.

According to the record, Rogers sent a text message to Cox at 6:37 p.m. the day of the shooting that said, "This Ronno." Cell phone records show that there were several phone calls between Rogers and Cox on March 6, 2017, in the hour or so leading up to the shooting, but that there were no calls between the two within the approximately 2 months preceding the shooting. CSLI records further showed that Cox's phone was in the area of the shooting at the time and that he was not in the area of his purported alibi.

Evidence offered at trial also linked Cox to a white Chevy Impala. When questioned by law enforcement, Dennis admitted that he had access to a white Impala that was registered in the name of his mother. Dennis

led officers to the white Impala, which was parked near Cox's brother's residence. The car was impounded. The license plate screws on the car looked new, and there were what appeared to be glue marks from in-transit stickers in the window. Inside the car was a steering wheel cover and two remaining license plate screws in original packaging, along with a receipt from an auto parts store for the purchase of a steering wheel cover and license plate screws. Further investigation revealed video showing Cox purchasing those items.

Law enforcement was unable to locate Cox until February 26, 2018. During his interview, Cox acknowledged that his phone number was the same number ending in 6473; that he knew Rogers; that he had met with Rogers on March 6, 2017, the day of [the] shooting; and that he wanted to obtain marijuana. Cox denied shooting Rogers and said he was with a female friend during the evening of the shooting. That friend, who testified that Rogers was her uncle, also testified that she did not recall seeing Cox on March 6 or 7 and that she did not see him until early April. In addition, as previously noted, Cox's CSLI data suggested that he was not at this friend's home on the day of the shooting.

Cox was represented by the public defender's office at trial and on direct appeal. At trial, the case was submitted to the jury on a theory of felony murder of Rogers, in which the predicate felony was robbery of either cash or marijuana. In his direct appeal to this court, Cox assigned error to the overruling of his motions to suppress evidence of his cell phone records and to suppress statements he made to law enforcement officers. We rejected Cox's assignments of error and affirmed his convictions and sentences. *State v. Cox*, 307 Neb. 762, 985 N.W.2d 395 (2020).

On November 10, 2021, Cox filed a pro se verified motion for postconviction relief in which he set forth claims of ineffective assistance of counsel both at trial and on direct

appeal. He also filed a motion for appointment of postconviction counsel. Cox claimed that counsel provided ineffective assistance at trial because counsel (1) failed to interview, depose, and call three witnesses, (2) failed to investigate potential defenses, and (3) failed to object to three jury instructions. Cox also claimed that counsel provided ineffective assistance because counsel failed to assign and argue sufficiency of the evidence on direct appeal. Cox also made allegations of actual innocence. Cox's allegations regarding each claim will be discussed further in our analysis below.

On November 30, 2021, the district court ordered the State to file a response to Cox's motion for postconviction relief. On December 17, before the State filed its response, Cox filed a motion in which he requested "leave to add [certain exhibits] to the record." On January 4, 2022, the court entered an order in which it denied Cox's motion to add exhibits as premature. The court stated that after it received a response from the State, it would enter an order determining whether Cox was entitled to an evidentiary hearing, and that if it granted an evidentiary hearing, it would allow Cox to offer exhibits at that time. The State filed its response on February 28 and asserted in general terms that Cox's "motion only alleges conclusions of fact, or the records and files affirmatively show [Cox] is [not] entitled to . . . relief." The State therefore moved the court to deny Cox's motion for postconviction relief without an evidentiary hearing.

The district court filed an order on July 1, 2022, in which it determined that none of Cox's claims warranted an evidentiary hearing. The court's reasoning as to each claim is discussed further in our analysis below. The court dismissed Cox's motion for postconviction relief without an evidentiary hearing and overruled his motion for appointment of counsel.

Cox appeals the district court's order.

## III. ASSIGNMENTS OF ERROR

Cox claims that the district court erred when it (1) overruled his motion to add exhibits to the record, (2) dismissed

his motion for postconviction relief without an eviden-
tiary hearing, and (3) overruled his motion for appointment
of counsel.

## IV. STANDARDS OF REVIEW

[1,2] In appeals from postconviction proceedings, an appel-
late court reviews de novo a determination that the defendant
failed to allege sufficient facts to demonstrate a violation of his
or her constitutional rights or that the record and files affirma-
tively show that the defendant is entitled to no relief. *State v.
Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). An appellate
court reviews the failure of the district court to provide court-
appointed counsel in a postconviction proceeding for an abuse
of discretion. *State v. Oliveira-Coutinho*, 304 Neb. 147, 933
N.W.2d 825 (2019).

## V. ANALYSIS

### 1. District Court Did Not Abuse Its Discretion When It Overruled Cox's Motion to Add Exhibits to the Record

Cox first claims that the district court abused its discretion
when it overruled his motion to add exhibits to the record. We
find no abuse of discretion.

Cox argues that attaching relevant exhibits to a postconvic-
tion motion is an accepted practice in Nebraska and that such
exhibits may be considered by courts considering the motion.
He asserts that the exhibits he sought to add to the record
were newly discovered evidence that he had sought to attach
to his motion for postconviction relief but that the clerk of
the district court mistakenly mailed the exhibits back to him
rather than filing them with the motion. He argues that the
court abused its discretion when it overruled his motion to
add the exhibits to the record and failed to correct the mistake
of the clerk.

In that motion, Cox sought to "add [the] exhibits to the
record" rather than to attach them to the postconviction

motion. Cox does not assert that he had attempted to attach the exhibits to his postconviction motion; instead, he asserts that he attempted to "send or file" the exhibits but that the clerk "mailed them back" because they lacked a case number. Cox's postconviction motion made no reference to exhibits or other attachments to the postconviction motion. In view of the foregoing, the district court read the motion as a request to add evidence to the record. The court reasoned that in the absence of an order setting an evidentiary hearing on the postconviction motion, the addition of evidence to supplement the record was premature. The court stated that evidence would be received if and when the court granted an evidentiary hearing. See Neb. Rev. Stat. § 29-3001(2) (Reissue 2016) and *State v. Lessley, supra* (evidentiary hearing not required if motion does not contain adequate factual allegations or record shows prisoner entitled to no relief).

We find no error in the district court's reasoning, and we determine that the court did not abuse its discretion when it overruled Cox's motion to add exhibits to the record. We therefore reject this assignment of error.

## 2. District Court Did Not Err When It Dismissed Cox's Motion for Postconviction Relief Without an Evidentiary Hearing

Cox next claims that the district court erred when it dismissed his motion for postconviction relief without an evidentiary hearing. In our de novo review, we conclude that each of Cox's claims for postconviction relief was inadequately pled or was refuted by the record and that therefore, the district court did not err when it dismissed his motion without an evidentiary hearing. We begin our analysis by setting forth standards that are applicable to our review of postconviction claims, and we then review each of Cox's claims pursuant to those standards.

(a) Postconviction Standards

[3-5] Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Lessley, supra*. The district court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the state or federal Constitution. *State v. Lessley, supra*.

[6,7] However, the allegations in a motion for postconviction relief must be sufficiently specific for the district court to make a preliminary determination as to whether an evidentiary hearing is justified. *Id*. An evidentiary hearing is not required on a motion for postconviction relief when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

[8-10] Cox's claims for postconviction relief assert that he received ineffective assistance of counsel. A proper ineffective assistance of counsel claim alleges a violation of the fundamental constitutional right to a fair trial. *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Cullen,*

*supra*. The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id*.

[11] To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id*. See, also, *Chinn v. Shoop*, ___ U.S. ___, 143 S. Ct. 28, 214 L. Ed. 2d 229 (2022) (Jackson, J., dissenting from denial of certiorari; Sotomayor, J., joins).

Cox set forth claims of ineffective assistance of counsel for failing to interview, depose, and call witnesses, failing to investigate defenses, failing to object to jury instructions, and failing to assign and argue sufficiency of the evidence on direct appeal. Cox also asserts that he set forth a claim of actual innocence. On appeal, he argues that each of these claims warranted an evidentiary hearing and the granting of postconviction relief. We apply the principles set forth above to our review of Cox's claims.

(b) Failure to Investigate Defenses
and Witnesses

Cox's first two claims of ineffective assistance of trial counsel were that counsel failed to interview, depose, and call certain witnesses who could provide testimony regarding his two main theories of defense and that counsel failed to adequately investigate certain defenses. The two claims are intertwined because Cox generally alleged that the three witnesses would provide information relevant to his defenses.

The first asserted defense urged by Cox was his contention that Rufus Dennis was an alternate suspect and that

Dennis, and not Cox, had access to and control of the white Chevy Impala that was identified by witnesses as being present at the shooting. Cox contended that Dennis and Dennis' mother could provide testimony relevant to this defense. Cox generally alleged that although he and Dennis had been together earlier on the day of the shooting, the two parted ways prior to the crimes. Cox alleged that when they parted ways, Cox left his cell phone in the Impala that Dennis continued to drive.

Cox alleged that despite his urging, trial counsel failed to investigate Dennis as a suspect. Cox alleged that he told counsel that Dennis attempted to set Cox up for the shooting and that such attempt included saddling Cox with the Impala by selling it to Cox when Dennis knew it was connected to the shooting. Cox also alleged that as part of the attempt to set up Cox, Dennis left the Impala near Cox's brother's house and later led police to it at that location.

Cox alleged that his counsel failed to interview Dennis about the foregoing alleged facts, and Cox further alleged that Dennis would testify, inter alia, that he had control of the Impala the entire day of the shooting and that he and Cox parted ways before the time of the shooting. Cox also alleged that Dennis' mother would testify that the Impala belonged to her and that she loaned it to Dennis but that she would never have allowed him to loan it to another person. Cox further alleged that both Dennis and his mother would have testified that at the time of the shooting, both Dennis and the Impala were at the house of Dennis' mother.

The other defense that Cox claimed counsel failed to pursue was related to cash that Rogers had collected on the day of the shooting but that was not found on his person after the shooting. Essentially, Cox urges that he did not rob cash from Rogers because Rogers had paid on a debt earlier in the day and therefore had no cash for him to rob.

Cox alleged that William McNeal supplied drugs to Rogers and that Rogers owed McNeal money. Cox alleged that

McNeal would have testified that on the day of the shooting, he and Rogers had argued over money Rogers owed to McNeal and that at approximately 7:30 p.m., Rogers had come to McNeal's house and paid him $1,100 toward the debt. Cox asserted that part of the State's case against him was that Cox robbed Rogers of cash that Rogers had collected earlier in the day. To counter the State's case, evidence that Rogers had given $1,100 to McNeal would explain why the cash was not found on Rogers' person after the shooting and would have supported Cox's defense that he did not rob Rogers; therefore, there was no predicate felony to support a conviction for felony murder. Cox alleged that counsel failed to investigate this line of defense and failed to interview, depose, and call McNeal as a witness.

With regard to Cox's claims that trial counsel failed to investigate defenses and to pursue witnesses, the district court found that "the facts alleged by [Cox] relating to failure to investigate are generic and most importantly, do not state what exculpatory evidence would have been gathered or how such evidence would have changed the outcome of the trial." The court further found that Cox "merely alleges generic statements as to prejudice." The court therefore concluded that Cox's allegations relating to failure to investigate defenses and witnesses were "insufficient to warrant an evidentiary hearing."

[12,13] We have stated that in a motion for postconviction relief, a defendant is required to specifically allege what the testimony of potential witnesses would have been if they had been called at trial in order to avoid dismissal without an evidentiary hearing. *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021). Absent specific allegations, a motion for postconviction relief effectively becomes a discovery motion to determine whether evidence favorable to a defendant's position actually exists. *Id.*

But contrary to the district court's finding that Cox did not specifically allege what evidence would have been discovered, we determine that Cox made specific allegations with

regard to witnesses and the substance of what those witnesses would have stated. Cox identified three specific witnesses— McNeal, Dennis, and Dennis' mother—and he alleged specific testimony that each of those witnesses would have provided. Therefore, this was not an instance in which a defendant alleged that counsel should have investigated unspecified witnesses or alleged that counsel should have investigated specific witnesses but failed to allege what specific information those witnesses would have provided. Given Cox's allegations of evidence counsel would have discovered by interviewing the witnesses and investigating the defenses, Cox did not completely fail to make specific allegations regarding what an investigation would have uncovered.

However, we agree with the district court's findings that Cox's motion did not adequately allege "how such evidence would have changed the outcome of the trial" and that he alleged only "generic statements as to prejudice." Separately, we further determine that the record refutes those generic claims of prejudice.

With regard to the defense involving Dennis, Cox generally alleged that investigation would have provided evidence that Cox left his cell phone in Dennis' Impala after the two parted ways prior to the shooting and that the Impala was at the home of Dennis' mother at the time of the shooting. Cox's allegations of how such alleged evidence would have changed the outcome of the trial are not entirely clear and are somewhat contradictory. There was evidence at trial that placed Cox's cell phone at the scene and at the time of the shooting. Cox's suggested testimony by Dennis that Cox left his cell phone in Dennis' Impala would seem to explain why the cell phone was at the scene but Cox himself was not. However, contrariwise, Cox also alleged that Dennis and his mother would testify that the Impala and Dennis were at his mother's house at the time of the shooting. Cox appears to allege that if called as a fact witness, Dennis would have inculpated himself by placing himself, his Impala, and Cox's

cell phone, but not Cox himself, at the shooting; but Cox also alleges that Dennis and his mother would have testified he and the Impala were not at the scene at the time of the shooting but instead were at his mother's house, perhaps casting doubt on whether the Impala at the shooting was the same one Cox and Dennis used earlier that day.

The value of the suggested testimony is further clouded by the fact that evidence showed not only that Cox's cell phone was at the scene of the shooting but also that calls had been placed between Cox's cell phone and Rogers' cell phone shortly prior to the time of the shooting, supporting the State's theory that Cox and Rogers were to meet for a drug deal. There was also evidence that Cox had admitted to police that he had been making calls to Rogers. In light of this and other evidence against Cox, the effect of the suggested testimony by Dennis and his mother is unclear, and Cox does not allege facts to establish a reasonable probability of a different outcome at the trial.

With regard to the defense involving McNeal to the effect that Rogers had no cash for Cox to rob, we note that although McNeal did not testify at trial, the record indicates that some evidence was presented in Cox's defense at trial to support his defense that Rogers paid money to McNeal prior to the shooting. Such evidence included testimony by law enforcement investigators who found evidence placing Rogers near McNeal's residence shortly before the shooting and showing that money was deposited into McNeal's wife's bank account in the days after the shooting. The record also shows that during closing arguments, defense counsel specifically discussed McNeal and the evidence that arguably indicated that Rogers had paid the cash to McNeal prior to the shooting. Contrary to Cox's assertions, the record refutes any claim that defense counsel completely failed to investigate or present the defense that Rogers gave McNeal the cash he had collected earlier in the day. The record also shows that the State addressed the issue in its closing arguments and provided the jury

with a basis to find that even if Rogers had paid the cash to McNeal, Rogers had been robbed of the marijuana that he had brought to sell to Cox, because neither the marijuana nor the cash Cox should have paid to Rogers was found on Rogers after the shooting.

In order to show prejudice related to a claim of ineffective assistance of counsel, a defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. See *State v Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). We determine that Cox's allegations with regard to both the defense involving Dennis and the defense involving McNeal do not demonstrate a reasonable probability that the result of the trial would have been different. We therefore determine that Cox failed to adequately allege prejudice with regard to these claims.

We conclude that Cox's claims of ineffective assistance of trial counsel for failing to investigate witnesses and defenses did not warrant an evidentiary hearing.

### (c) Failure to Object to Jury Instructions Nos. 8 and 10 and Supplemental Instruction No. 2

Cox also claimed ineffective assistance of trial counsel for failing to challenge three jury instructions. The three instructions identified by Cox in his postconviction motion were instructions Nos. 8 and 10 and supplemental instruction No. 2. Cox had been charged in the information with first degree murder under both premeditated murder and felony murder theories. At trial, the jury was instructed on only the felony murder theory. In instruction No. 5, the court instructed on the elements of felony murder and specified robbery or attempted robbery as the underlying felony. Instruction No. 5 stated in part that among the elements of felony murder that the State must prove were that Cox "intended to commit the crime of robbery," that Cox "was in the course of

committing or attempting to commit that robbery," and that Cox, "either alone or by aiding and abetting another, killed . . . Rogers, during the course of committing or attempting to commit that robbery."

In instruction No. 8, the court instructed as follows:

The Defendant can be guilty of a robbery or attempted robbery even though he personally did not commit every act involved in the crime so long as he aided someone else to commit it. The Defendant aided someone else if:

1. The Defendant intentionally encouraged or intentionally helped another person to commit the robbery or attempted or robbery; and

2. The Defendant intended that the robbery be committed; or the Defendant knew that the other person intended to commit the robbery; and

3. The robbery or attempted robbery in fact was committed by that other person.

The Defendant can be guilty of Felony Murder if he is guilty of robbery as an aider and a death resulted during the course of committing the robbery.

Evidence of the Defendant's mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving guilt under an aiding and abetting theory.

In instruction No. 10, the court instructed as follows: "Intent is an element of the crimes charged against the Defendant. In deciding whether the Defendant acted with intent you should consider his words and acts and all the surrounding circumstances." When the jury was deliberating, the jury sent a question to the court asking, "How do we find if we believe he or someone with him caused the death, but not in commission of robbery?" The court responded to the question with supplemental instruction No. 2 in which the court instructed, "Please use the Court's instruction upon which you must base your verdict."

Cox generally alleged in his postconviction motion that instructions Nos. 8 and 10 were incorrect statements of law

and that supplemental instruction No. 2 merely directed the jury back to the allegedly erroneous instructions. With regard to instruction No. 8, Cox alleged that his trial counsel submitted a proposed instruction regarding aiding and abetting but failed to ensure that the instruction given by the court correctly stated the law. Cox alleged that his counsel's proposed instruction was similar to instruction No. 8 given by the court, but, Cox alleged, the court gave an instruction that substituted the word "crimes" for robbery.

Cox further alleged that throughout the trial, the State had "argued" a premeditated murder theory of first degree murder, but that "at closing," the State changed to a theory of felony murder. Cox alleged that his counsel had a duty to be sure the jury understood the difference between premeditated murder and felony murder and the requisite intent under each theory. Cox alleged that the State "changing their theory at the end of trial confused the jury," and he alleged that the jury's question that led to supplemental instruction No. 2 was evidence that the jury was confused. Cox alleged that counsel's failure to object to instructions Nos. 8 and 10 and supplemental instruction No. 2 caused the jury to be "given incorrect statements of law" and that there was "a reasonable [pr]obabil[i]ty the outcome of trial may have been different."

With regard to Cox's claim that trial counsel failed to challenge jury instructions, the postconviction district court determined that the jury instructions, read together and taken as a whole, correctly stated the law and were not misleading. The court found that "a challenge to the jury instructions would have been unsuccessful," and it therefore found that Cox's counsel was not ineffective for failing to challenge the instructions.

[14] Although Cox alleged specific instructions to which counsel should have objected, we agree with the district court's determination that the jury instructions read together and as a whole with other instructions correctly stated the law and were not misleading and that therefore, Cox failed

to adequately allege prejudice from counsel's failure to object to the instruction. Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017).

Cox alleged that instruction No. 8 differed from his proposed instruction because it referred generally to "crimes" rather than specifically to "robbery." As set forth above, instruction No. 8 referred to "robbery or attempted robbery" rather than "crimes." Cox's proposed instruction was similar to instruction No. 8 but it referred only to "robbery." Instruction No. 8 appears to differ from Cox's proposed instruction only in that it refers to both "robbery" and "attempted robbery." We note that instruction No. 10, regarding intent, refers to the "crimes" charged and the intent element of those "crimes." However, the reference to "crimes" was necessary in instruction No. 10 that referred to the respective intent required for each crime charged against Cox, including the first degree murder charge, as well as the weapon possession and use charges. Therefore, it would not have been proper in instruction No. 10 to refer only to "robbery" rather than to "crimes."

Cox also asserts that the jury instructions were erroneous or misleading because throughout the trial the State appeared to be pursuing a charge of first degree murder under a premeditated murder theory rather than a felony murder theory. Cox was charged in the information under both theories of first degree murder. However, the jury instructions given at the end of the trial instructed only on felony murder. The other jury instructions, including the specific instructions to which Cox asserts his counsel should have objected, were consistent with that theory, and as we determined above, the instructions read together and as a whole did not misstate the law and were not misleading.

We conclude that Cox's claim of ineffective assistance of trial counsel for failing to object to jury instructions did not warrant an evidentiary hearing.

### (d) Failure to Raise Sufficiency of
### Evidence on Direct Appeal

Cox claimed that counsel provided ineffective assistance on direct appeal because counsel failed to assign error and argue that there was not sufficient evidence to support his convictions. Cox alleged in his postconviction motion that he had urged his counsel that sufficiency of the evidence was "his most important argument" on appeal and that counsel told Cox that counsel would "be sure that all his arguments get in," but that counsel failed to assign sufficiency of the evidence on direct appeal. Cox alleged that "[h]ad appellate counsel argued and assign[ed] as error the sufficiency of the evidence there exist[s] a reasonable probability the outcome of the [direct] appeal may have been differ[e]nt."

Cox further alleged that the State's theory at trial was that Cox had arranged to buy marijuana from Rogers but that "instead of paying him [Cox] robbed and killed him." He stated that felony murder could only be found "if the jury finds evidence of a robbery" and intent by Cox to commit a robbery. Cox alleged that "no direct evidence connects [Cox] to this case" and that the State misled the jury by arguing that he "robbed the victim of $1100 dollars." Cox alleged that the State knew that this argument was "misplaced because they had text messages between [Rogers] and . . . McNeal" in which Rogers told McNeal he would "come to McNeal's house and pay him" what was owed.

Cox then alleged various alternate theories under which McNeal might have killed Rogers or that another suspect may have taken cash from Rogers' person after he had been shot. Cox further alleged that "[n]o evidence supports [Rogers] having a pound of weed, or him giving it to anybody." Cox also alleged that evidence regarding the Impala "was used as a decoy by the [S]tate to steer the jury away from the evidence of no robbery," that such evidence "as it relates to Cox was irrelevant" and "misleading," and that the State "never proved it was actually . . . Dennis' car that was involved in

the crime," but "[o]nly one similar to it." Cox further alleged that there was evidence that undermined the State's theory that Cox had robbed Rogers.

Regarding Cox's claim that counsel failed to assign error and argue sufficiency of the evidence on direct appeal, the district court found that Cox "fails to set forth any authority or argument to establish that any of the issues in his motion could have changed the outcome of the appeal." The court concluded that Cox's allegations were "insufficient to warrant an evidentiary hearing."

[15] To show prejudice with regard to his claim of ineffective assistance of appellate court, Cox needed to allege facts that would show that but for counsel's failure to raise the claim, there is a reasonable probability that the outcome of the appeal would have been different. See *State v. Cullen*, 311 Neb. 383, 972 N.W.2d 391 (2022). Cox alleged counsel was deficient for failing to raise sufficiency of the evidence on appeal. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Matteson*, 313 Neb. 435, 985 N.W.2d 1 (2023).

Cox has not alleged facts that would show a reasonable probability that an appellate court applying this deferential standard of review would not have found that there was sufficient evidence to support Cox's convictions. The evidence at trial, as set forth above and in our opinion on direct appeal, when viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find the essential elements of the crimes charged. Cox asserts that there was no direct evidence to show that Cox or a companion shot or robbed Rogers. However, there was sufficient circumstantial evidence that tied Cox to being at the scene of the shooting and that tied him to the vehicle from which the gunshot

was fired. There was also sufficient evidence to show that Cox and Rogers had arranged for Rogers to sell marijuana to Cox, and there was sufficient evidence from which the jury could infer that the shooting of Rogers occurred while Cox alone, or with another, was committing a robbery or attempted robbery of Rogers during the arranged transaction.

[16] Cox generally argues that the evidence against him was not credible or that his theories of defense disproved the charges against him. However, in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). As we determined above, there was sufficient evidence at trial, both direct and circumstantial, that the jury could have found to support Cox's convictions. Under the applicable standards of review, Cox's allegations regarding the credibility of such evidence or of conflicting evidence to support his defense would not have created a reasonable probability that the appellate court would have found there was not sufficient evidence or that the outcome of Cox's appeal would have been different if counsel had raised sufficiency of the evidence on direct appeal.

We conclude that Cox's claim of ineffective assistance of appellate counsel for failing to assign and argue sufficiency of the evidence on direct appeal did not warrant an evidentiary hearing.

### (e) Claim of Actual Innocence

[17] Cox finally argues that the district court should have granted an evidentiary hearing because he made a claim of actual innocence. He cites *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018), for the proposition that a claim of

actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act, and he argues that an evidentiary hearing was necessary "for full development of the record to determine whether Cox is actually innocent of all the offenses he was convicted of after trial," brief for appellant at 27.

[18,19] While we have recognized that a claim of actual innocence may support postconviction relief, we have further stated:

> "The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. The threshold to entitle a prisoner to an evidentiary hearing on such a postconviction claim is '"extraordinarily high."' Such a petitioner must make a strong demonstration of actual innocence because after a fair trial and conviction, the presumption of innocence vanishes."

*State v. Newman*, 300 Neb. at 793, 916 N.W.2d at 413 (quoting *State v. Dubray*, 294 Neb. 937, 885 N.W.2d 540 (2016)).

The allegations of actual innocence in Cox's motion for postconviction relief do not meet the extraordinarily high standard to warrant an evidentiary hearing. While setting forth his claim that counsel was ineffective for failing to raise sufficiency of the evidence on direct appeal, Cox stated that he "swears he is innocent" of the crimes for which he was convicted. Cox also filed an affidavit in which he stated that he was innocent of the crimes. Cox does not appear to have made any specific allegation of fact to support a claim of actual innocence; instead, he appears to rely on the allegations he made in support of his claims of ineffective assistance of counsel at trial and on direct appeal.

We reject Cox's argument that an evidentiary hearing was warranted by his claim of actual innocence. Having also determined that Cox's claims of ineffective assistance of counsel at trial and on direct appeal did not warrant an

evidentiary hearing, we conclude that the district court did not err when it denied Cox's motion for postconviction relief without an evidentiary hearing.

### 3. District Court Did Not Abuse Its Discretion When It Overruled Cox's Motion to Appoint Postconviction Counsel

Cox finally claims that the district court erred when it overruled his motion for appointment of counsel. Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant. *State v. Oliveira-Coutinho*, 304 Neb. 147, 933 N.W.2d 825 (2019). Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint postconviction counsel for an indigent defendant. *Id*. We therefore conclude the district court did not abuse its discretion when it overruled Cox's motion to appoint postconviction counsel.

### VI. CONCLUSION

Having determined that each of Cox's claims did not warrant an evidentiary hearing, we conclude that the district court did not err when it denied Cox's motion for postconviction relief without an evidentiary hearing. We further conclude that the district court did not abuse its discretion when it overruled Cox's motion to add exhibits to the record or when it overruled his motion to appoint counsel. We therefore affirm the district court's order.

Affirmed.