IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ABRAM

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAMAAL R. ABRAM, APPELLANT.

Filed January 23, 2024.    No. A-22-869.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Patrick McCormick for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Jamaal R. Abram appeals from the order of the district court for Douglas County, denying his motion seeking postconviction relief following an evidentiary hearing. Finding no error, we affirm.

## II. STATEMENT OF FACTS

### 1. CONVICTION AND SENTENCE

The charges in this case stemmed from events occurring in Omaha, Nebraska, in June 2008, when the victim was at a cemetery visiting the grave of her boyfriend, a cousin of Abram, who committed suicide approximately a year prior. A portion of the boyfriend's extended family believed the victim was somehow to blame for the boyfriend's death. While at the cemetery, the victim was confronted by Abram's brother and three female companions and forced to go with

them. According to the brother, if anyone in the family encountered the victim, they were to take her to the boyfriend's mother because the boyfriend's mother wanted to talk to her. Over the course of several hours, Abram's brother drove the victim to various locations, during which time he spoke to Abram numerous times by cell phone. According to the trial testimony of Abram's brother, Abram told him to take the victim from the cemetery and directed him where to go. Eventually, Abram's brother received a call from a cousin (the brother of the deceased boyfriend), who directed Abram's brother to a particular isolated, dead-end location. Upon arriving, the brother observed the vehicle of the cousin who had called him; he did not see anyone in the cousin's vehicle. After the brother parked, facing the cousin's vehicle, an individual, dressed in black, wearing gloves, and with a small revolver, came out of some nearby bushes. Both the brother and the victim testified at trial that they recognized this individual as Abram. Abram shot the victim multiple times. He then left the scene with the cousin in the cousin's vehicle, and the brother left in his vehicle. The victim survived her life threatening injuries.

In October 2008, the State filed an information in the district court, charging Abram with attempted first degree murder, use of a deadly weapon in the commission of a felony, and criminal conspiracy. Following trial, the jury found Abram guilty on all three charges. Abram's first attorney (referred to herein as "trial counsel") withdrew, and a second attorney (referred to herein as "appellate counsel") was appointed to represent Abram for sentencing and direct appeal. The court then sentenced Abram to consecutive prison sentences of 40 to 50 years, 40 to 50 years, and 20 to 30 years on the three convictions. See *State v. Abram*, No. A-10-219, 2010 WL 5384184 (Neb. App. Dec. 21, 2010) (selected for posting to court website).

## 2. Direct Appeal

Abram, represented by appellate counsel, filed a direct appeal, asserting that there was insufficient evidence to sustain his convictions for attempted first degree murder and criminal conspiracy and that he received excessive sentences. This court affirmed Abram's convictions and sentences. We also noted that while Abram's brief included assertions that his trial counsel was ineffective for failing to object to various jury instructions, no such issue was assigned as error on appeal. See *State v. Abram, supra*.

## 3. Postconviction Proceedings

### (a) Postconviction Motion

On May 20, 2014, Abram, through postconviction counsel, filed his operative postconviction motion. In his first claim, he alleged that he was denied the right to a fair trial in various ways, including that the trial court made certain errors, that a key witness for the State perjured himself, and that prosecutorial misconduct occurred when a trial witness was allowed to perjure himself. In Abram's second claim, he set forth multiple allegations of ineffective assistance of trial counsel. Finally, in his third claims, Abram alleged that his appellate counsel was ineffective for failing to assign as error or argue that he was denied his right to a fair trial pursuant to the specific allegations of his first claim, failing to assign as error or argue that trial counsel was ineffective for the reasons specified in his second claim, failing to assign as error that the trial court presented improper jury instructions, and failing to properly assign errors in his direct appeal brief that were deemed waived by this court.

Attachments to Abram's postconviction motion included two letters from Abram's brother (one dated August 19, 2011, and the other undated). The August 2011 letter referenced the brother feeling bad about having done "the unforgivable" to Abram, having dreams of being at Abram's trial "snitching," having "lied on" Abram at his trial, being "brainwashed" by his own attorney, and being "prepared a million times" before Abram's trial "so everything would come out just right," including having been informed of "what [the victim] said so [the brother's] lies would collaborate with hers."

In the second letter, the brother stated, "Anyway I realize that I made the most [expletive] decision I ever made in my miserable . . . life by doing what I did and although you say you forgive me I don't forgive myself for that." Later in the second letter, he stated:

> Anyway bout that other shit with these lawyers and shit. Really most of it was my lawyer relaying messages and shit to me about what they was saying. Telling me shit like if I could give them more people the better off I would be. He used to try and get me to put [two individuals] in it. He used to come tell me [the victim] said this so you would have to say the same so your stories would collaborate. He lied and said you was telling on me. Them [expletives] always used to be in there coaching me reminding me this is what happened or this is what [the victim] said. I remember @ the trial my lawyer was like this is what the prosecutor said happened so this is what your [sic] gonna have to say. Bro listen what you need me to do write an affidavit or something. Just let me know what[']s up and I will do it.

He also stated, "Ay [sic] I love you with all my heart and I regret what I did with every second of every day."

The third item attached to Abram's postconviction motion was an affidavit from the mother of the victim's deceased boyfriend. In her affidavit, the mother stated that if she had been called to testify at Abram's trial, she would have testified that she never spoke with any family member about bringing the victim to her so they could talk, that she had spoken with the victim on several occasions after the boyfriend's death, and that she had the victim's contact information and could have contacted her directly if she had wanted to speak with her.

### (b) Evidentiary Hearing

An evidentiary hearing was held before the district court on February 6, 2018, and May 28, 2019. The brother and the cousin testified at the hearing. The court also received depositions from Abram, Abram's trial and appellate attorneys, and the brother's trial attorney; affidavits from the brother and the prosecutor; and copies of the letters from the brother referenced above. We have set forth details of this evidence as necessary in the analysis section below.

### (c) Ruling

On November 1, 2022, the district court entered an order denying Abram's claims for postconviction relief. The court identified Abram's "basic claims" in support of his motion to be the denial of his right to a fair trial, ineffective assistance of trial and appellate counsel, the perjured testimony of his brother, and being "[i]nnocent of the [c]rime." The court found that each of the issues raised in Abram's claim to having been denied the right to a fair trial could have been

brought on direct appeal and were thus procedurally barred. Next, the court addressed the issues raised in Abram's claims of ineffective assistance of trial counsel and appellate counsel and found them to be without merit. The court then addressed the issue of the allegedly perjured testimony of Abram's brother, who had identified Abram as the shooter at trial, and found no credible evidence that the State knowingly used perjured testimony to secure Abram's conviction. The court specifically found the testimony of Abram's brother during the evidentiary hearing not credible. We have set forth further details of the court's analysis of this issue below. Finally, the court addressed Abram's claim of innocence based on his cousin "now claiming for the first time that he was actually the shooter in this case," and not Abram or Abram's brother. The court noted case law discussing how a possible postconviction claim of actual innocence might be raised. The court then discussed the relevant evidence in this case, both from trial and the postconviction evidentiary hearing, and rejected this claim. In doing so, the court found that the "new testimony" of the brother (the court referenced Abram's first name here, but given the reference to "new testimony," appears to mean the brother) and his cousin was not credible and did not "overcome" the trial testimony of the victim identifying Abram as the shooter.

Abram perfected the present appeal to this court.

## III. ASSIGNMENTS OF ERROR

Abram assigns, restated, that the district court erred when it failed to find that (1) Abram was denied the right to a fair trial based on certain specified errors by the trial court, Abram's brother perjuring himself, and prosecutorial misconduct with respect to knowingly allowing the brother to give perjured or false testimony; (2) trial counsel was ineffective in various specified ways; (3) appellate counsel was ineffective for failing to assign as error or argue that Abram was "denied his right to a fair trial," failing to assign that "trial counsel was ineffective," and failing to assign error "regarding jury instructions"; and (4) Abram's postconviction assertions of actual innocence amounted to a violation of his due process rights.

## IV. STANDARD OF REVIEW

In an evidentiary hearing on a motion for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in the evidence and questions of fact. *State v. Ellis*, 311 Neb. 862, 975 N.W.2d 530 (2022). An appellate court upholds the trial court's findings unless they are clearly erroneous. *Id.*

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law which an appellate court reviews independently of the lower court's ruling. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Ellis, supra*. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id.* With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Ellis, supra*.

- 4 -

## V. ANALYSIS

### 1. DENIAL OF RIGHT TO FAIR TRIAL

In his first assignment of error, Abram asserts that the district court erred when it failed to find he was denied the right to a fair trial based on certain specified errors by the trial court, Abram's brother perjuring himself, and prosecutorial misconduct with respect to knowingly allowing the brother to give perjured or false testimony. The issues raised in Abram's first assignment of error correspond directly to the issues raised in the first claim set out in Abram's postconviction motion. The only issue included in Abram's first claim, but not in his first assignment of error, is his assertion of trial court error in failing to sustain his trial counsel's motions for a directed verdict.

In the order ruling on Abram's motion for postconviction relief, the district court found that every one of the issues raised in Abram's first claim were or could have been litigated on direct appeal. The court further found that Abram failed to adduce any evidence or establish that he was entitled to relief on any of those claims. However, in the section of its order addressing issues raised in Abram's postconviction brief, the court separately addressed the issue of perjured testimony by Abram's brother and whether Abram had carried his burden of proving that the State knowingly used perjured testimony from the brother to secure Abram's conviction.

### (a) Issues of Trial Court Error Procedurally Barred

We agree with the district court's determination that the issues of trial court error raised in Abram's first postconviction claim are procedurally barred. Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable. *State v. Galindo*, 315 Neb. 1, 994 N.W.2d 562 (2023). The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity. *Id.* A motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and which were or could have been litigated on direct appeal. *Id.* The issues of trial court error raised in Abram's first postconviction claim and again in his first assignment of error are all issues that could have been brought on direct appeal. The district court did not err in denying this portion of Abram's first claim.

### (b) Perjured Testimony and Prosecutorial Misconduct

At trial, the brother identified Abram as the shooter; in his testimony during the evidentiary hearing, he indicated that he "wasn't exactly sure who the shooter was." The district court observed that Abram's postconviction motion relies upon the argument that there was perjured testimony adduced from his brother at trial and that the State was aware of this perjured testimony. The court framed the issue as not one of whether the State's main trial witness recanted his trial testimony during the postconviction evidentiary hearing, but rather, whether Abram carried his burden of proving that the State knowingly used perjured testimony from the brother.

Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *State v. Malone*, 308 Neb. 929, 957 N.W.2d 892, *modified on denial of rehearing* 309 Neb. 399, 959 N.W.2d 818 (2021). Prosecutorial

misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *Id.* A prosecutor's misconduct that prejudices a defendant's right to a fair trial violates due process. *Id.*

Where the testimony is in any way relevant to a case, the knowing use of perjured testimony by the prosecution deprives a criminal defendant of his or her right to a fair trial. *State v. Lotter*, 278 Neb. 466, 771 N.W.2d 551 (2009). In a postconviction proceeding, the burden is on the defendant to establish that the prosecution knowingly used false evidence in securing the conviction. *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003) (superseded by statute on other grounds as stated in *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015).

The district court found that the brother's testimony during the evidentiary hearing was not credible. The court stated:

> It was apparent [the brother] only answered questions convenient to him and lacked details about all facts. The timing of his accusations toward the State and his attorney for feeding him testimony [at trial] should be questioned in that they arose after the statute of limitations had run and the State could no longer pursue additional charges that had been dismissed against [the brother] as part of a plea agreement. [The brother's] testimony is self-serving as [the brother] admitted several family members had been upset with him for testifying during the initial trial.

The district court went on to determine that, even assuming the brother's trial testimony was false, Abram had presented no evidence that the prosecution knew or should have known his testimony was false or perjured at the time of trial. In reaching this conclusion, the court noted the prosecutor's affidavit attesting to her belief that the information provided by the brother before trial and his testimony during trial was "truthful and honest" based on his demeanor and the fact that his testimony was supported by other eyewitnesses. She also stated in her affidavit that while she may have asked for more detail on specific topics during their meetings, the brother was never asked or told to testify to anything that was not truthful. The court also noted the deposition testimony of the brother's attorney that after the brother entered a plea to charges against him and prior to Abram's trial, the brother never recanted or told his attorney he was not being truthful and that the brother was never told by the attorney or by the State to testify about certain facts during Abram's trial. And, the court noted the consistency between the brother's trial testimony and the testimony of the victim. Again, the court stated that the brother's postconviction testimony was lacking in detail and not credible, and it found no credible evidence that the State knowingly used perjured testimony to secure Abram's conviction.

The district court's assessment of whether Abram met his burden of proving the State knowingly used perjured testimony to secure his conviction is consistent with our own review of the record from the evidentiary hearing. Its findings of fact on this issue are not clearly erroneous. The court did not err in denying the portion of Abram's first postconviction claim relating to the allegedly perjured testimony of his brother and the issue of prosecutorial misconduct.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second assignment of error, Abram asserts that the district court erred when it failed to find that trial counsel was ineffective in various specified ways. In this assignment of error,

Abram sets forth allegations of ineffective assistance of trial counsel that correspond to 12 of the 14 issues of trial counsel ineffectiveness raised in the second claim of his postconviction motion. Although Abram apparently did not directly address his second claim in his postconviction brief, the district court addressed each of the issues of trial counsel ineffectiveness raised in Abram's second claim. However, we decline to do so. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). See, also, *State v. Nearhood*, 233 Neb. 767, 448 N.W.2d 399 (1989) (where first attorney withdrew and second attorney represented defendant during hearing on motion to withdraw plea, at sentencing, and on direct appeal, defendant was required to allege claims of ineffective assistance of first attorney on direct appeal). Abram was represented by different counsel on direct appeal. Abram did not properly raise any issues of ineffective assistance of trial counsel on direct appeal. Each of the issues of trial counsel ineffectiveness identified in Abram's second assignment of error was known to Abram at the time of his trial and could have been raised on direct appeal. Abram's claims of ineffective assistance of trial counsel are procedurally barred.

### 3. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Abram raised issues of ineffective assistance of appellate counsel in the third claim of his postconviction motion. It was his first opportunity to do so. Claims of ineffective assistance of appellate counsel may be raised for the first time on postconviction review. *State v. Newman*, 300 Neb. 770, 916 N.W.2d 393 (2018).

When analyzing a claim of ineffective assistance of appellate counsel, courts usually begin by determining whether appellate counsel failed to bring a claim on appeal that actually prejudiced the defendant. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *Id.*

The district court denied Abram's third claim, based on its analysis of his claims of ineffective assistance of trial counsel and denial of the right to a fair trial, which showed that those claims would not have had merit on direct appeal. The court also noted the deposition testimony of Abram's appellate counsel with respect to counsel's thoughts on the strength of Abram's appeal. Appellate counsel testified that his "initial thought" after reviewing the trial evidence was that he had "really not much to argue to an appellate court."

Abram asserts that the district court erred when it failed to find that appellate counsel was ineffective for "failing to assign as error or argue that Abram was denied his right to a fair trial," "failing to assign as error or argue that trial counsel was ineffective," and "failing to assign error regarding jury instructions."

To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued. *State v. Boppre*, 315 Neb. 203, 995 N.W.2d 28 (2023). The third assignment of error is vaguely stated and does not specifically incorporate the previously alleged deficiencies by trial counsel. On that basis, we could disregard the assigned error. Nevertheless,

even when considering Abram's supporting arguments, we conclude the third assigned error must fail due to lack of specificity.

Abram's argument in support of his third assignment of error adds little in the way of specificity. The totality of his argument with respect to ineffective assistance of appellate counsel is as follows:

> The district court erred and abused discretion when it failed to find ineffective assistance of appellate counsel. Appellate counsel was ineffective for failing to assign as error or argue that [Abram] was denied his right to a fair trial, the jury instruction issues, and that trial counsel was ineffective as set forth above in the sections of this brief above.

> Appellate counsel failed to assign as error that the district court presented improper jury instructions, which failed to accurately set forth the law, did not conform to the NJI2d Crim. Model Jury Instructions and prejudiced [Abram]. Appellate counsel failed to properly assign errors in his appeal brief that were deemed waived by the Nebraska Court of Appeals, prejudicing [Abram].

This argument does little more than restate the allegations of his assignment of error. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Even if we turn to the argument sections in support of Abram's first and second assignments of error (concerning the denial of a fair trial and ineffective assistance of trial counsel), we note that Abram does not specifically argue each of the issues specifically raised in his first and second assignments of error. And, many of the arguments presented in support of his first two assignments of error consist only of conclusory statements. For purposes of this third assignment of error, those conclusory statements do not show a reasonable probability that had his appellate counsel assigned those issues as error, the result of the direct appeal would have been different. Conclusory assertions unsupported by coherent analytical argument fail to satisfy the requirement of arguing an assigned error to obtain consideration by an appellate court. *State v. Boppre, supra.* And, Abram does not argue, specifically or otherwise, each of the issues specifically raised in his first and second assignments of error.

Because of the generalized and vague nature of Abram's third assignment of error, his failure to include an argument in support of that error that does little more than restate the assigned error, and the conclusory nature of much of the argument in support of Abram's first and second assignments of error, we decline to address Abram's third assignment of error further.

### 4. ACTUAL INNOCENCE

Abram assigns that the district court erred when it failed to find that his postconviction assertions of actual innocence amounted to a violation of his due process rights. This assignment of error is based on the cousin's assertions made during the evidentiary hearing that the cousin was actually the shooter. The district court addressed this issue in its order denying postconviction relief, but it noted that Abram's motion did not mention any claim that the cousin was the shooter or that Abram was actually innocent. The only mention of the cousin in Abram's postconviction motion was his assertion that his trial counsel was ineffective for failing to depose the cousin. The court stated, "If this claim had any legs, it would have been raised in trial, [Abram's] appeal, and

[Abram's] initial [postconviction motions]." The court did, however, go on to address the claim of actual innocence that developed during the course of the evidentiary hearing.

In addressing the claim, the district court first noted "[the cousin's] self-serving [postconviction] testimony that is protected by double jeopardy as [the cousin] will be shortly released from prison from his sentence related to this case." The court also noted the "ever changing" testimony from these family members about the shooter's identity. Specifically, the court noted that during trial, Abram and his brother each identified the other as being the shooter; in his postconviction testimony, the brother testified that he was not certain as to the shooter's identity, although he knew three men were there; the cousin testified in the postconviction proceedings that he was the shooter; and Abram's postconviction testimony states that his trial testimony was truthful. The court also noted the strength of the victim's trial testimony identifying Abram as the shooter. In that regard, the court noted that the victim knew Abram well, she recognized his appearance and voice, she spoke his nickname during the incident, and he responded by telling her not to say his name and shooting her. The court concluded that the new testimony of the brother and the cousin was not credible and did not overcome the trial testimony of the victim with respect to Abram being the shooter. Accordingly, the court denied Abram's claim of actual innocence.

We are not convinced that Abram raised a claim of actual innocence in his postconviction motion. In an appeal from the denial of postconviction relief, an appellate court will not consider for the first time on appeal claims that were not raised in the verified motion. *State v. Ammons*, 314 Neb. 433, 990 N.W.2d 897 (2023). However, because this issue was addressed by the district court and is addressed by both parties in their briefs on appeal, we consider it briefly.

A claim of actual innocence may be a sufficient allegation of a constitutional violation under the Nebraska Postconviction Act. *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023). The essence of a claim of actual innocence is that the State's continued incarceration of such a petitioner without an opportunity to present newly discovered evidence is a denial of procedural or substantive due process. *Id.* The threshold to entitle a prisoner to an evidentiary hearing on a postconviction claim of actual innocence is extraordinarily high. *Id.* Such a petitioner must make a strong demonstration of actual innocence because after a fair trial and conviction, the presumption of innocence vanishes. *Id.*

The district court found that the postconviction testimony of the cousin and the brother was not credible and that the evidence presented in the evidentiary hearing that someone other than Abram was the shooter did not overcome the strength of the victim's trial testimony identifying Abram as the shooter. The court's findings are consistent with our own review of the evidence and are not clearly erroneous. The court did not err in denying Abram's claim of actual innocence.

## VI. CONCLUSION

We find no clear error in the factual findings of the district court following the evidentiary hearing. The court did not err in denying Abram's motion for postconviction relief.

AFFIRMED.