Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/05/2021 08:11 AM CST

State of Nebraska, appellee, v.
Forrest R. Cox III, appellant.

___ N.W.2d ___

Filed November 13, 2020.    No. S-19-780.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth or Fifth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure: Evidence: Police Officers and Sheriffs.** The exclusion of evidence obtained in violation of the Fourth Amendment is not itself a constitutional right; rather, it is a remedy designed to deter constitutional violations by law enforcement.

3. ____: ____: ____: ____. In situations where the exclusion of evidence as a remedy would not deter law enforcement, several exceptions to the exclusionary rule have been recognized. One of those exceptions applies to evidence obtained by police in objectively reasonable reliance on a statute later found to be unconstitutional.

4. **Trial: Evidence: Motions to Suppress: Waiver: Appeal and Error.** When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal. Put another way, a failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal.

5. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not

whether in a trial that occurred without the error, a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

Appeal from the District Court for Douglas County: Kimberly Miller Pankonin, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Natalie M. Andrews for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Forrest R. Cox III was convicted of first degree murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. At issue on appeal is whether the district court erred in admitting cell phone records for Cox's phone and whether Cox invoked the right to counsel during questioning by law enforcement. We affirm.

## FACTUAL BACKGROUND

Cox was charged in connection with a shooting at a convenience store in Omaha, Nebraska, on the evening of March 6, 2017. The victim of the shooting, Laron Rogers, died on March 22 as a result of injuries he sustained.

### Trial Testimony

According to testimony and evidence presented at trial, an employee of the convenience store called emergency services upon learning of a shooting in the parking lot of the store. Rogers was lying on the ground. Rogers was initially stabilized and taken to a hospital, but he did not respond to questions about who had shot him.

Two different witnesses at the scene of the shooting testified that Rogers was leaning into a white vehicle without license plates, which vehicle was identified by both witnesses as a Chevy Impala. According to the witnesses, it appeared that Rogers was talking to the occupants of the vehicle. A gunshot was heard, and Rogers walked a few steps before collapsing. The witnesses both testified that the white Impala then drove off. Law enforcement later obtained surveillance video from the scene and confirmed that the suspect vehicle was a white Impala.

During the course of the investigation, law enforcement visited Rogers' place of employment, a cell phone store, and spoke with the store manager. The manager showed law enforcement video clips that were taken earlier on the day of Rogers' shooting. The video clips showed two men inside the store. According to the manager, coworkers had seen Rogers outside the store interacting with the men prior to the men entering the store. Law enforcement was able to identify Cox at the time the clips were viewed. Shortly thereafter, the other man was identified as Rufus Dennis.

The manager provided law enforcement with a piece of paper with "Bubba" and the phone number ". . . 6473" written on it. According to one of Rogers' coworkers, the phone number on the piece of paper was the phone number provided by Cox as he sought assistance with his cell phone at the store. Other evidence at trial revealed that Cox's nickname was "Bubba."

That same coworker also testified that Rogers left work at approximately 6 p.m. but stayed in the parking lot, sitting in his car with a friend. The friend was a manager at a different branch of the same cell phone company that employed Rogers. She had stopped by to pick up phones for her store and stayed to smoke marijuana and talk with Rogers in his car after he got off work. The friend testified that Rogers smoked and dealt marijuana.

According to the friend, while she was in Rogers' car, two men in a white Chevy Impala, with no license plates and

displaying in-transit stickers, parked at the store. One of the men—whom she identified at trial as Cox—stopped at Rogers' car to talk to Rogers. The friend said that Cox wanted to buy some marijuana, but that Rogers did not have enough on hand. Rogers and Cox exchanged telephone numbers and agreed to be in touch later that day. Cox and the other man, unknown to the friend but later identified as Dennis, went into the store; the friend and Rogers left the store's parking lot in their separate vehicles.

During the course of the investigation, law enforcement determined that Rogers owed his drug supplier money. Both Rogers' fellow employee and Rogers' friend testified that Rogers had asked them for money, though both declined to give him any. After leaving work, Rogers went to the home he shared with his mother and father. He asked his father for money and received $200. In addition, bank records show that Rogers withdrew nearly $950 from his bank accounts on the day of the shooting. That money was not recovered.

After identifying Cox and obtaining the paper with the phone number on it, law enforcement sought subscriber information for that number. A warrant was issued, and the cell phone records from January 1 to March 24, 2017, including cell site location information (CSLI), were provided to law enforcement. In addition, law enforcement had access to Rogers' cell phone.

According to the record, Rogers sent a text message to Cox at 6:37 p.m. the day of the shooting that said, "This Ronno." Cell phone records show that there were several phone calls between Rogers and Cox on March 6, 2017, in the hour or so leading up to the shooting, but that there were no calls between the two within the approximately 2 months preceding the shooting. CSLI records further showed that Cox's phone was in the area of the shooting at the time and that he was not in the area of his purported alibi.

Evidence offered at trial also linked Cox to a white Chevy Impala. When questioned by law enforcement, Dennis admitted that he had access to a white Impala that was registered

in the name of his mother. Dennis led officers to the white Impala, which was parked near Cox's brother's residence. The car was impounded. The license plate screws on the car looked new, and there were what appeared to be glue marks from in-transit stickers in the window. Inside the car was a steering wheel cover and two remaining license plate screws in original packaging, along with a receipt from an auto parts store for the purchase of a steering wheel cover and license plate screws. Further investigation revealed video showing Cox purchasing those items.

Law enforcement was unable to locate Cox until February 26, 2018. During his interview, Cox acknowledged that his phone number was the same number ending in 6473; that he knew Rogers; that he had met with Rogers on March 6, 2017, the day of shooting; and that he wanted to obtain marijuana. Cox denied shooting Rogers and said he was with a female friend during the evening of the shooting. That friend, who testified that Rogers was her uncle, also testified that she did not recall seeing Cox on March 6 or 7 and that she did not see him until early April. In addition, as previously noted, Cox's CSLI data suggested that he was not at this friend's home on the day of the shooting.

## Procedural History

Prior to trial, Cox filed motions to suppress his cell phone records and the statements he made to law enforcement in his February 26, 2018, interview. As to the statements, Cox argued that his rights under *Miranda v. Arizona*[1] were violated when he invoked his right to remain silent and officers continued to question him. As for the cell phone records, Cox argued that the warrant was obtained without probable cause as explained in *Carpenter v. U.S.*[2]

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] *Carpenter v. U.S.*, ___ U.S. ___, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018).

In its order, the district court denied the motion to suppress the statements. With respect to the cell phone records, the court noted that the State had conceded that "the search warrant, although obtained prior to *Carpenter* . . . , has not been remedied post-Carpenter. Accordingly, the State concedes this issue and Cox's motion to suppress these records is granted."

However, while the motion to suppress the cell phone records was pending, the State filed a second affidavit seeking a warrant for the cell phone records. The second affidavit included additional averments intended to cure the previous deficiency. A second warrant was then issued, and Cox filed another motion to suppress. The second motion was denied.

At trial, in response to questioning about Cox's cell phone records, counsel for Cox objected on the basis of the motion to suppress. That objection was denied. Counsel for Cox objected at the next opportunity, stating: "Judge, I would just ask that my same objection be noted for the record and a standing objection for any new matters with respect to . . . 6473." The court granted counsel's "request for a standing objection."

Counsel also objected to the admission of exhibit 162 on the basis of his motion to suppress. Exhibit 162 was a video of law enforcement's first interview with Cox. In addition to showing that video, the detective who conducted the interview testified. Cox offered few objections to this testimony and made no objections on *Miranda* grounds.

Prior to the case being submitted to the jury, the State abandoned its theory that the murder was premeditated and proceeded solely on a felony murder theory. Cox was found guilty on all counts and sentenced to life imprisonment for felony murder, 25 to 30 years' imprisonment for use of a deadly weapon, and 40 to 45 years' imprisonment for possession of a firearm by a prohibited person.

## ASSIGNMENTS OF ERROR

Cox assigns, restated and consolidated, that the district court erred in (1) admitting cell phone records for Cox's cell

phone in violation of Cox's Fourth Amendment rights and (2) admitting statements made by Cox that were in violation of Cox's Fifth Amendment rights as explained in *Miranda.*

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda*, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth or Fifth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[3]

## ANALYSIS

On appeal, Cox assigns that the district court erred in admitting his cell phone records and in admitting statements made after he invoked his right to remain silent during his February 26, 2018, interrogation.

### Admissibility of Cell Phone Records

Cox assigns that the district court erred in denying his second motion to suppress his cell phone records, including his CSLI. Cox's argument is rooted in the U.S. Supreme Court's decision in *Carpenter.*[4]

In *Carpenter*, the Court concluded that individuals had a reasonable expectation of privacy in their record of physical movements as captured by CSLI. Because of this expectation of privacy, the Court concluded that a warrant was, in most cases, required before such records could be acquired. The conclusion reached in *Carpenter* effectively overruled this court's earlier decision in *State v. Jenkins*,[5] in which

---

[3] *State v. Schriner*, 303 Neb. 476, 929 N.W.2d 514 (2019).

[4] *Carpenter v. U.S., supra* note 2.

[5] *State v. Jenkins*, 294 Neb. 684, 884 N.W.2d 429 (2016).

we held that the acquisition of CSLI did not implicate the Fourth Amendment.

Since *Carpenter*, this court has had the opportunity to address the applicability of the exclusionary rule and suppression of evidence as a remedy for a Fourth Amendment violation of the type at issue in this appeal.[6] In both *State v. Brown*[7] and *State v. Jennings*,[8] we declined to apply the exclusionary rule to CSLI obtained without a warrant supported by probable cause, explaining in each case that the rationale for the exclusionary rule would not be met on the facts presented. In both of these cases, officers relied upon the Stored Communications Act to support court orders seeking cell phone records, and specifically CSLI. At the time the court orders were sought and executed, the U.S. Supreme Court had not yet decided *Carpenter*. We concluded that officers in each case were following the statute as written and that the statute in question was not clearly unconstitutional.

[2,3] The exclusion of evidence obtained in violation of the Fourth Amendment is not itself a constitutional right.[9] Rather, it is a remedy designed to deter constitutional violations by law enforcement.[10] Thus, in situations where the exclusion as a remedy would not deter law enforcement, several exceptions to the exclusionary rule have been recognized.[11] One of those exceptions applies to evidence obtained by police in objectively reasonable reliance on a statute later found to be unconstitutional.[12]

---

[6] *State v. Jennings*, 305 Neb. 809, 942 N.W.2d 753 (2020); *State v. Brown*, 302 Neb. 53, 921 N.W.2d 804 (2019).

[7] *State v. Brown, supra* note 6.

[8] *State v. Jennings, supra* note 6.

[9] *Id.*

[10] *Id*.

[11] *Id*.

[12] *Id*.

In this case, law enforcement sought a court order based upon a statute that was, many months later, determined to be unconstitutional. Similar to *Brown* and *Jennings*, law enforcement's reliance on a court order issued under the Stored Communications Act, at a time when the act had not yet been found by the U.S. Supreme Court or by this court to implicate the Fourth Amendment, was not objectively unreasonable.

We observe that the district court originally granted Cox's motion to suppress below on the basis of the State's concession, but that the evidence was eventually admitted following the denial of a second motion to suppress. The district court reasoned that a subsequent warrant essentially cured any Fourth Amendment violation.

Of course, this reasoning varies from the reasoning we employ today, and in particular, this court's reasoning relies upon the good faith exception to the Fourth Amendment's warrant requirement. We have previously held that an appellate court may not, sua sponte, rely on the good faith exception to the warrant requirement.[13] We explained that the concern with an appellate court's reaching the issue of good faith sua sponte is that a defendant must have sufficient opportunity to defend against the application of the exception.[14] But a review of the record shows that this scenario is not presented here. The State raised the issue of good faith in its brief on appeal. Cox also argues the issue in his brief on appeal.

The district court did not err in admitting the CSLI evidence at trial. There is no merit to Cox's first assignment of error.

### ADMISSIBILITY OF STATEMENTS

Cox also assigns that the district court erred in denying his motion to suppress statements made to law enforcement after he invoked his right to remain silent. He argues, in turn, that the district court erred in admitting those statements. Because

---

[13] *State v. Tompkins*, 272 Neb. 547, 723 N.W.2d 344 (2006).

[14] *Id.*

Cox failed to object to the investigating detective's testimony about his statements, we find no error in the admission of these statements.

At issue are statements made during law enforcement's first interview of Cox on February 26, 2018. The State offered a video of that interview, exhibit 162, which was shown to the jury. The record shows, and the State acknowledges, that Cox objected to exhibit 162 on the basis of the earlier motion to suppress. But Cox did not seek a continuing objection, or object on the basis of *Miranda*, to any other testimony regarding the statements he made during the interview.

Rather, the detective testified, without objection, that Cox agreed that he knew Rogers, that the 6473 number was his, and that he provided the name of his alibi. In addition, Cox told the detective that he was dropped off at his brother's residence after seeing Rogers at the cell phone store and that he had been in a white Chevy Impala. Other evidence showed that the white Impala in this case, found near the brother's residence, was later seized.

[4] When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal.[15] Put another way, a failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal.[16]

Because there was no objection to the statements made by Cox and testified to by the interviewing detective, Cox has waived any right to assert error. The video that was shown and objected to was cumulative to that testimony as well as to other evidence presented at trial. Namely, several witnesses at the cell phone store testified that Rogers spoke to Cox at the

---

[15] *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014).

[16] See *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

store, both Cox's and Rogers' cell phone records supported contact between the two, and other evidence tied Cox to the white Chevy Impala.

[5] Even if the proper objections had been made, however, we would still find no reversible error in the admission of the statements, because any error would have been harmless. Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error, a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.[17]

During the challenged interview, Cox did not admit to the crime or even admit to being in the area at the time of the crime. When these statements are compared to the cell phone records of calls between Rogers and Cox, the CSLI, and the fact that Cox had control over a white Chevy Impala, which had been identified by multiple witnesses as being involved in the shooting, there was sufficient evidence unattributable to any error in offering the video and statements.

There is no merit to Cox's second assignment of error.

CONCLUSION

The decision of the district court is affirmed.

Affirmed.

---

[17] *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020).