Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/19/2024 08:06 AM CDT

State of Nebraska, appellee, v.
William S. Serrano, appellant.

___ N.W.3d ___

Filed March 12, 2024.    No. A-23-367.

1. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

2. **Appeal and Error.** Consideration of plain error occurs at the discretion of an appellate court.

3. ____. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

4. **Criminal Attempt: Intent.** Conduct is not to be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent.

5. **Criminal Attempt.** Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact.

Appeal from the District Court for Kimball County: Derek C. Weimer, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Timothy S. Noerrlinger and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

Riedmann, Arterburn, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

William S. Serrano appeals from his convictions of manslaughter, two counts of attempted terroristic threats, and possession of a firearm during the commission of a felony, following a jury trial in the district court for Kimball County. Serrano assigns that the district court erred in denying his motion for directed verdict on all charges for which he was convicted. Following our review, we affirm his convictions; however, because the district court committed plain error in its sentencing of Serrano for his convictions of manslaughter and attempted terroristic threats, we vacate those sentences and remand the cause for resentencing on those convictions only.

## BACKGROUND

On December 31, 2021, Serrano was with friends when he discussed wanting to go to the home of his ex-wife, Sheena Erickson, with an AK-47 rifle and "shoot up" the house. On January 3, 2022, around 4:30 p.m., Serrano bought two "single shots" and a half pint of whiskey. Approximately an hour later, he purchased an additional half pint of whiskey. About 7:52 p.m., Serrano called Erickson, but she did not answer her phone. Erickson was at Shellie Pile's home; Pile is the mother of Erickson's boyfriend. About 2 minutes later, Erickson received a call from Serrano using Tessa Gehring's phone; Gehring, the victim of the manslaughter charge, was Serrano's girlfriend. Erickson and Serrano's daughter answered Erickson's phone, but she gave the phone back to Erickson after answering.

Serrano began discussing custody issues with Erickson, because Serrano planned to move an hour away with the children. Initially, the conversation was calm, but after Erickson stated that she would just keep the children on the weekends rather than return to court on the custody issue, Serrano "started going off," saying that Erickson was "a worthless mother." Serrano sounded "[r]eally mean" and was speaking loudly. Serrano started screaming about Erickson's boyfriend, and Pile, who could hear the conversation, began yelling at Serrano. Serrano told Pile, "I'll come after you, too." Because Serrano was yelling and screaming, Erickson hung up the phone. Serrano and Erickson's daughter testified at trial and confirmed that Serrano and Pile were "screaming" and that Serrano's voice sounded like he was "mad."

Serrano and Erickson's two sons were with Serrano that evening, and the older son testified that at some point, Serrano was on the phone arguing with someone, got mad, and threw the phone against the wall. The older son thought Serrano was talking to either a friend or to Erickson. After Serrano threw his phone, he asked Gehring for her phone. Serrano's two sons then went to the family room and began playing a video game. Serrano came through the family room and went into the garage; Serrano had placed a "CO2 gun" in the waistband of his pants, had put on his coat, and had a camouflage backpack with him. The older son testified that Serrano said that "he got called out to the Army." When Serrano came back into the house, he had a shotgun that "was opened" (bent back as though to load it), and he went back to his bedroom. From the family room, the older son heard several sounds; he heard Serrano yell at Gehring, "something snap," Gehring say "ouch," a noise like something fell on the ground, and shortly thereafter, a gunshot.

Serrano came out of the bedroom, took his sons into the garage, and called the 911 emergency dispatch service. When officers arrived on the scene, they saw Serrano, who was very distraught. Gehring was lying on the floor of the bedroom,

deceased. A shotgun was on the bed, as was an empty box of ammunition shells. The camouflage backpack was on the floor, along with a set of keys. Inside the backpack were 23 shotgun shells. An officer opened the shotgun, and a spent casing was released; DNA testing supported that Serrano was a contributor of DNA found on the shell. An autopsy confirmed that Gehring died from a single shotgun wound to the head. The shotgun at issue had a damaged trigger. Because of this, once the hammer was pulled back and engaged, the gun would fire upon release of the hammer without anyone pulling the trigger.

Serrano was charged with manslaughter, attempted first degree murder, two counts of attempted terroristic threats, and possession of a firearm during the commission of a felony. At the conclusion of the State's case, Serrano made a motion for a directed verdict, which was denied. Serrano presented no evidence. A jury found Serrano not guilty of attempted first degree murder and guilty of all other charges. For his conviction of manslaughter, a Class IIA felony, Serrano was sentenced to 20 to 20 years' imprisonment. For each conviction of attempted terroristic threats, a Class IV felony, Serrano was sentenced to 1 year's imprisonment. For his conviction of possession of a firearm during the commission of a felony, a Class II felony, Serrano was sentenced to 10 to 20 years' imprisonment. The sentences for manslaughter and possession of a firearm were to be served consecutively to each other, and Serrano received 485 days' credit for time served. Serrano appeals.

## ASSIGNMENTS OF ERROR

Serrano assigns, reordered and restated, that the district court erred in denying his motion for a directed verdict on the attempted terroristic threats charges, because the State failed to prove he made any threats to commit a crime of violence with an intent to terrorize. He also assigns that the district court erred in denying his motion for a directed verdict on the manslaughter and possession of a firearm during

the commission of a felony charges, because the State failed to prove a proximate cause between the alleged unlawful acts and the unintentional death.

## STANDARD OF REVIEW

[1] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Samuels*, 31 Neb. App. 918, 991 N.W.2d 900 (2023).

[2,3] Consideration of plain error occurs at the discretion of an appellate court. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id*.

## ANALYSIS

*Attempted Terroristic Threats.*

Serrano assigns the district court erred in denying his motion for a directed verdict on the charges of attempted terroristic threats. He argues that although there was evidence that he was intoxicated and angry, there was no evidence that he made a threat of violence to Pile or Erickson. He argues that Erickson did not feel threatened and that his conduct in his own residence, more than 38 miles from Pile's residence, did not amount to a substantial step toward terrorizing Pile or Erickson. We find the evidence was sufficient to support the convictions.

Serrano was charged with attempted terroristic threats. In order to convict him, the State needed to present evidence that Serrano intended to threaten Pile and Erickson with any crime of violence, with the intent to terrorize them, and that he engaged in conduct which constituted a substantial step in the course of conduct intended to culminate in his commission of the felony offense of terroristic threats and which strongly corroborated his intent to commit the crime of terroristic threats. See, Neb. Rev. Stat. § 28-201 (Cum. Supp. 2022); Neb. Rev. Stat. § 28-311.01 (Reissue 2016).

[4,5] Conduct is not to be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact. *Id*. The Eighth Circuit has stated that "[a]n attempt exists when a defendant's actions go 'beyond mere preparation; [are] necessary to the consummation of the crime; and . . . strongly corroborate [the defendant's] criminal intent to [commit the predicate offense].'" *U.S. v. Young*, 613 F.3d 735, 742 (8th Cir. 2010). We have previously noted the difficulty in determining when a defendant's disposition matures into an inchoate crime but have recognized that whether a defendant's conduct constitutes a substantial step toward the commission of a crime such that it is an attempt is generally a question of fact. See *State v. Pittman*, 5 Neb. App. 152, 556 N.W.2d 276 (1996).

In *Pittman*, we noted that the Model Penal Code provided examples of behavior of attempt, including "'possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances'" and "'possession, collection or fabrication of the materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under

the circumstances.'" 5 Neb. App. at 167, 556 N.W.2d at 286, quoting Model Penal Code § 5.01(2) (1985).

Here, the evidence showed that a few days prior to the phone call, Serrano expressed his desire to "shoot up" Erickson's home. While on the phone with Erickson, Serrano yelled angrily at her and told Pile he would "come after [her], too." After the phone call ended, Serrano placed a "CO2 gun" in his waistband, put on his coat, and loaded a backpack with ammunition. He retrieved a shotgun and loaded it. Serrano cocked the shotgun, pulling back the hammer. Under these circumstances, a jury could conclude that possession of these materials served no lawful purpose and that Serrano was taking substantial steps, beyond mere preparation, that were to culminate in his driving to Pile's home and at the very least threatening Pile and Erickson with a gun.

Viewing the events of that evening in the light most favorable to the State, we determine the evidence was sufficient for the jury to find that Serrano's conduct strongly corroborated his intent to commit the crime of terroristic threats and that he took substantial steps toward the commission of that crime. The district court did not err in denying Serrano's motion for directed verdict on the charges of attempted terroristic threats.

*Manslaughter and Possession of Firearm.*

Serrano assigns that the district court erred in denying his motion for a directed verdict on the manslaughter and weapons charges because the State failed to prove proximate cause between the alleged unlawful acts and the death in its prosecution for involuntary manslaughter. He articulates his argument as follows:

> The State offered a novel theory which the [district] court apparently accepted that after the phone conversation with Erickson and Pile, thirty minutes and 38 miles apart, Serrano was still engaged in the unlawful acts of Attempted Terroristic Threats by retrieving and loading a shotgun, gathering shotgun shells and lying to his

sons about "Army" duties before that shotgun misfired killing [Gehring]. The State's theory ignores the necessity of proving proximate cause between alleged unlawful acts and the death in a prosecution for Involuntary Manslaughter.

Brief for appellant at 9.

Although Serrano phrases his argument in terms of proximate cause, we analyze it using the specific language of the relevant statutes. To convict Serrano of manslaughter, the State had to put forth evidence that Serrano caused Gehring's death unintentionally *while in the commission of an unlawful act*. See Neb. Rev. Stat. § 28-305 (Reissue 2016). To convict Serrano of possession of a firearm during the commission of a felony, the State was required to adduce evidence that Serrano possessed a firearm *during the commission of a felony*. See Neb. Rev. Stat. § 28-1205 (Reissue 2016). In this case, the underlying unlawful act required under § 28-305 and the felony under § 28-1205 is the same: terroristic threats against Pile and/or Erickson.

Serrano argues that because he shot Gehring more than 30 minutes after his conversation with Pile and Erickson and was more than 38 miles from their location, the shooting did not occur "while in the commission of an unlawful act" or "during the commission of a felony." Serrano's argument is premised on the idea that the attempted terroristic threats occurred only before and during the phone conversation. But, as addressed in our analysis of Serrano's first assignment of error, the evidence, viewed in the light most favorable to the State, was that Serrano unintentionally killed Gehring by shooting her with the shotgun while taking substantial steps that would culminate in threatening Pile and Erickson with that shotgun. This was sufficient to support the convictions for manslaughter and possession of a firearm during the commission of a felony. The district court did not err in denying Serrano's motion for a directed verdict on these charges.

Serrano argues the State failed to show a proximate and causal relation between the alleged unlawful act and the unintentional death. Serrano directs us to case law explaining that criminal conduct is a proximate cause of an event, if the event in question would not have occurred but for that conduct, and that such conduct is not the proximate cause of the event if that event would have occurred without such conduct.

However, even viewing the evidence through this lens of proximate cause, we find no error. Gehring's death would not have occurred but for Serrano's acts involving the shotgun, which we have determined constituted a substantial step in his attempted terroristic threats toward Pile and Erickson. This assignment of error fails.

*Plain Error in Sentencing.*

We note a matter of plain error in the imposition of the sentences for Serrano's convictions of manslaughter and attempted terroristic threats. For his conviction of manslaughter, a Class IIA felony, Serrano received a sentence of 20 to 20 years' imprisonment. However, Neb. Rev. Stat. § 29-2204 (Cum. Supp. 2022) provides in part that when imposing a sentence for any class of felony other than a Class III, IIIA, or IV, the maximum term shall not be greater than the maximum limit provided by law. Section 29-2204 further provides that the minimum term shall be any term of years less than the maximum term imposed by the court or the minimum term shall be the minimum limit provided by law. Serrano received a term of 20 to 20 years' imprisonment, and the minimum term is not less than the maximum term, nor is it the minimum provided by law. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). As such, the sentence imposed does not comply with § 29-2204. We vacate the sentence imposed for the conviction of manslaughter and remand the cause to the district court for resentencing on that count.

We also find plain error regarding the determinate sentences imposed for attempted terroristic threats. Attempted terroristic

threats is a Class IV felony; here, the sentences for the Class IV felonies were imposed concurrently to sentences for a Class II and a Class IIA felony. With respect to a Class IV felony,

> [f]or any sentence of imprisonment for a Class . . . IV felony . . . imposed consecutively or concurrently with . . . a sentence of imprisonment for a Class . . . II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.

Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016). Thus, here, the sentences for the Class IV felonies should have been indeterminate, because they were imposed consecutively or concurrently with sentences for a Class II and a Class IIA felony. We vacate the sentences imposed for the convictions of attempted terroristic threats and remand the cause to the district court for resentencing on those counts.

## CONCLUSION

We find that the evidence was sufficient to support Serrano's convictions and that the district court did not err in denying his motions for a directed verdict. However, because the district court erred by imposing the same term of years for the minimum and maximum term for the conviction of manslaughter and by imposing determinate sentences for the attempted terroristic threats convictions, we vacate those sentences and remand the cause to the district court for resentencing on those counts only.

Affirmed in part, and in part vacated
and remanded for resentencing.