IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SPENCER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BERNARD J. SPENCER, APPELLANT.

Filed August 20, 2024.    No. A-23-628.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Bernard J. Spencer appeals from his convictions of terroristic threats, use of a deadly weapon to commit a felony, and two counts of second offense possession of a firearm by a prohibited person. He contends that the district court erred in denying his request for a continuance of his jury trial; in denying him a hearing on a subsequently filed motion to suppress; in allowing the jury to have unfettered access during deliberations to a 911 call; and in imposing excessive sentences. For the reasons set forth herein, we affirm in part, and in part vacate and remand for resentencing.

- 1 -

## II. STATEMENT OF FACTS

### 1. EVENTS LEADING TO ARREST

On August 23, 2022, Treasure Ellis called 911 stating that Spencer, her boyfriend, had brandished a gun and shot at her. The gunshots could be heard on the 911 recording. Officers arrested Spencer at his home and, after obtaining a search warrant, searched both Spencer's home and car. During the searches, officers found two guns, ammunition, and fired cartridge casings. The casings matched those found at the crime scene. Spencer was charged with terroristic threats, a Class IIIA felony; use of a firearm to commit a felony, a Class IC felony; and two counts of second offense possession of a firearm by a prohibited person, both Class IB felonies. The information was later amended to specify the type of guns allegedly possessed by Spencer, the date of Spencer's prior conviction of possession of a firearm by a prohibited person, and that the State was only pursuing the intentional act portion of the terroristic threats statute.

### 2. PRETRIAL MOTIONS

#### (a) Motion to Suppress

In January 2023, Spencer filed a motion to suppress alleging that the searches of Spencer's home and car, although conducted pursuant to a search warrant, violated his constitutional rights because the warrant was based on an affidavit that was insufficient to establish probable cause; that the good faith doctrine was inapplicable because the issuing magistrate had wholly abandoned his or her judicial role; that the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; that the warrant was so facially deficient that the executing officer could not have reasonably presumed it to be valid; and that any evidence obtained should be suppressed as fruit of the poisonous tree. The hearing thereon was held in January 2023. Following the hearing, the district court overruled Spencer's motion(s) to suppress noting that

> the search warrant specifically is limited to a search for weapons and other indicia of ownership of those weapons in [Spencer's] home and the vehicle. Under the circumstances presented, the Court believes that the warrant contains sufficient particularity as to what could be searched for in the home and vehicle. Further, since [Spencer] is alleged to have fired a weapon while in his vehicle, it is reasonable to conclude that the weapon might still be in the vehicle. And, if it is not in the vehicle, it is reasonable that [Spencer] might have taken it into his home.

#### (b) Request to Proceed Pro Se

In March 2023, the court granted Spencer's request to represent himself pro se and ordered that the public defender's office would remain on the case in an advisory role.

#### (c) Motion to Continue

On May 22, 2023, Spencer filed a motion to continue his scheduled June 5 trial date. Spencer asserted that he was still receiving discovery from the State that he "would like to still go over" and there were "numerous hours" of body-camera footage that was not in the discovery

materials. The State asserted that it provided Spencer with edits to the body-worn camera footage that edited the length of the footage and muted the sound because the footage was "full of hearsay," but that the footage had previously been provided to Spencer and was "not new or anything different. It's just [that these are] the edits the State intends to introduce." Spencer also argued that there was "missing body-worn camera footage." The State explained:

> The officers, obviously, depending on what they're doing, at times have their body-worn [cameras] on and off. So . . . when he's searching . . . Spencer's car, the body-worn [camera] is on. I think, at some point, they complete all of that, and they do turn it off. So I don't think there's anything he doesn't have. [The video footage] just ends. The officers have turned it off.

The court overruled Spencer's motion to continue the trial.

### (d) Subsequent Motion to Suppress

On May 22, 2023, Spencer, acting pro se, filed a subsequent motion to suppress asserting, inter alia, that the search of his property was made without a valid warrant and without probable cause; that the affidavit was insufficient to support issuance of the search warrant; that officers turned off their body cameras; and that the evidence obtained was fruit of the poisonous tree. The court overruled the subsequent motion to suppress without an evidentiary hearing.

### 3. TRIAL

During the trial, the State called numerous witnesses and introduced into evidence numerous exhibits including the 911 calls related to the shooting, body-worn camera footage from eight officers, a video of Spencer's post-arrest interview, photos of the two guns and ammunition seized from Spencer's apartment, and photos of the spent shell casings found in Spencer's car and at the scene of the shooting. Additionally, the court received into evidence the parties' stipulation that "Spencer was a 'prohibited person' as defined by Nebraska Revised Statutes due to the fact that he had previously been convicted of a felony." Ellis did not testify at the trial.

The evidence established that on August 23, 2022, Ellis called 911 stating that Spencer, her boyfriend, had brandished a gun and shot at her. At the time, Ellis was 5 weeks pregnant with Spencer's child. The gunshots can be heard on the 911 recording. Additionally, two other individuals called 911 reporting they heard five to six gunshots. Officers arrested Spencer at his home and, after obtaining a search warrant, searched both Spencer's home and car. During the searches, officers found a .45 caliber firearm, a 9-millimeter firearm, ammunition, and fired cartridge casings. The casings matched those found at the crime scene and in Spencer's car, which had been fired from one of Spencer's guns.

Spencer testified in his own defense. He admitted to being at the scene of the shooting during the evening of August 23, 2022; owning both guns; and that the casings found at the scene and in his car matched his 9-millimeter firearm. However, Spencer denied that he argued with the victim on August 23 or brandished a gun and pointed it at Ellis. Spencer claimed that a person who was with him fired the gun, but declined to identify the person whom he claimed was the shooter.

### 4. Jury Request, Verdict, and Sentencing

After the case was submitted to the jury, the jury requested to "listen to the 911 audio call." The court responded that it "will allow you to listen to Exhibit 3 the 911 audio. The Court Bailiff will set up the device for you to listen to the audio."

Following deliberations, the jury convicted Spencer of all four of the charged offenses. Thereafter the court found that Spencer had previously been convicted of possession of a deadly weapon by a prohibited person, thereby making his current convictions second offenses.

During the sentencing hearing, Spencer appeared pro se with backup counsel. The court noted that Spencer was

> 36 years old, and . . . you've been charged repeatedly with offenses, but you've actually been convicted of two robberies and a possession of a deadly weapon back in 2016 for which you received six to eight years on each charge.
>
> You've got an assault charge conviction, a weapon concealment charge conviction, violation of a protection order. It appears to be a felony. Domestic assault. You were given probation. It was violated. And I think you were given 15 months.
>
> Your LS/CMI score is high to very high in all categories, except leisure and recreation. And the other problem, of course, is your convictions almost all involve weapons or violence . . .

The court sentenced Spencer as follows: 3 years' imprisonment for terroristic threats; 20 to 21 years' imprisonment with a mandatory minimum of 5 years' imprisonment for use of a firearm to commit a felony; and 20 to 21 years' imprisonment each for the two counts of possession of a firearm by a prohibited person, second offense. The sentences were all ordered to be served consecutively, with Spencer granted credit for 335 days served towards his sentence for terroristic threats. Spencer has timely appealed to this court and is represented by different appellate counsel.

## III. ASSIGNMENTS OF ERROR

Spencer contends that: (1) the district court erred in denying his request for a continuance of his jury trial; (2) the district court erred in denying him a hearing on a subsequently filed motion to suppress; (3) the district court erred in allowing the jury to have unfettered access during deliberations to a 911 call; (4) the evidence was insufficient to support his convictions for terroristic threats and use of a firearm to commit a felony; and (5) the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and the evidence. *Id*.

When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal. *State v. Cox*, 307 Neb. 762, 985 N.W.2d 395 (2020).

A trial court's decision to allow a jury during deliberations to rehear or review evidence, whether such evidence is testimonial or nontestimonial, is reviewed by an appellate court for an abuse of discretion. *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Keadle*, 311 Neb. 919, 977 N.W.2d 207 (2022). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

It is within the discretion of the trial court to impose consecutive rather than concurrent sentences for separate crimes. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

## V. ANALYSIS

### 1. DENIAL OF REQUEST FOR CONTINUANCE OF JURY TRIAL

Spencer's first assignment of error is that the district court abused its discretion in denying his request for a continuance of his jury trial. Spencer argues that he needed the continuance because "[h]e had not been able to secure his evidence that he could have offered to support his challenges to the search." Brief for appellant at 17.

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

Here, Spencer argued to the district court that he needed a continuance because he was still receiving discovery materials from the State. However, the State clarified that it had not provided Spencer with any new evidence but was providing him with edited footage that had hearsay removed. Spencer also argued that there was missing footage from Sergeant Dembinski's body-worn camera. The State explained:

> The officers, obviously, depending on what they're doing, at times have their body-worn [camera] on and off. . . . when he's searching . . . Spencer's car, the body-worn [camera] is on. I think, at some point, they complete all of that, and they do turn it off. So I don't think there's anything he doesn't have. It just ends. The officers have turned it off.

The State also stated that it had just provided a two-page supplemental report outlining that law enforcement had recently located and spoke with Ellis but did not otherwise provide Spencer with new discovery in advance of the trial. Even after the State's explanation, Spencer continued to argue that additional evidence would show that officers "went inside of my home without a search warrant and that they went inside of my home illegally."

Based upon our review of the record, Spencer remained steadfast in his assertion that his original motion to suppress should have been sustained because of irregularities in time reports governing the timing of his arrest and the procurement of the search warrant. His request for a continuance related to obtaining more time to continue pursuing evidence to demonstrate those alleged timing discrepancies. But, as the State represented, it had previously provided Spencer with all of the available body-worn camera footage and other evidence and had provided no new evidence which would justify additional delay. To that end, Spencer did not articulate any specific evidence he had not previously received or that even existed which would better demonstrate the alleged discrepancies in timing that he previously described to the court. And as we find later in this opinion, the evidence which Spencer sought to suppress ultimately was admitted into evidence without objection and that issue was not preserved for review on appeal. Under these circumstances, we find that Spencer was not prejudiced by the court's ruling governing his motion to continue the trial and find no abuse of discretion associated with the court's ruling. This assignment of error fails.

## 2. DENIAL OF SUBSEQUENT MOTION TO SUPPRESS
### WITHOUT EVIDENTIARY HEARING

Spencer's second assignment of error is that the district court erred in denying him an evidentiary hearing on his subsequent motion to suppress filed in May 2023. In his subsequent motion, Spencer alleged, inter alia, that the application and affidavit for the search warrant were not supported by probable cause.

When a motion to suppress is overruled, the defendant must make a specific objection at trial to the offer of the evidence which was the subject of the motion to suppress in order to preserve the issue for review on appeal. *State v. Cox*, 307 Neb. 762, 985 N.W.2d 395 (2020). Put another way, a failure to object to evidence at trial, even though the evidence was the subject of a previous motion to suppress, waives the objection, and a party will not be heard to complain of the alleged error on appeal. *Id*.

Although we acknowledge that Spencer's subsequent motion to suppress was filed at least 10 days prior to his scheduled trial as required by Neb. Rev. Stat. § 29-822 (Reissue 2016), we find that Spencer waived this assignment of error because he failed to timely object at trial. During trial, numerous officers testified, without objection, that two guns were found in Spencer's home and spent shell casings were found inside Spencer's vehicle. Accordingly, Spencer waived this assignment of error by failing to object during trial.

## 3. JURY ACCESS TO 911 CALL DURING DELIBERATIONS

Spencer's third assignment of error is that the district court erred in allowing the jury to have unfettered access to a 911 call during deliberations. Spencer claims that the district court

failed to follow the guidelines set out in *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000), *disapproved on other grounds, State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), and *disapproved, State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). He contends that the court erred in allowing the jury "unfettered access to the 911 recordings." Brief for appellant at 23. Spencer's reliance on *Dixon* is misplaced.

In *State v. Dixon*, 259 Neb. 976, 614 N.W.2d 288 (2000), the Nebraska Supreme Court set out the procedure to be used during a jury trial when the jury requests access to evidence during deliberations:

> We do not ordinarily stray from the common-law rule, i.e., a trial court should not allow unrestricted review of previously played portions of tape recordings, any more than a court would allow unrestricted rereading of the testimony of an actual witness at trial. *State v. Jacob, supra.* When a jury makes a request to rehear certain evidence, the common-law rule requires that a trial court discover the exact nature of the jury's difficulty, isolate the precise testimony which can solve it, and weigh the probative value of the testimony against the danger of undue emphasis. If, after this careful exercise of discretion, the court decides to allow some repetition of the tape-recorded evidence for the jury, it can do so in open court in the presence of the parties or their counsel or under other strictly controlled procedures of which the parties have been notified. *Chambers v. State, supra.*

> . . . . It is only under circumstances where the jury makes a request to rehear certain evidence during deliberations that the trial court must proceed to weigh the probative value of the evidence against the danger of undue emphasis, in open court in the presence of both parties or their counsel, before determining whether portions of the evidence should be reheard by the jury.

*State v. Dixon*, 259 Neb. 976, 987-88, 614 N.W.2d 288, 297 (2000), *disapproved on other grounds, State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012), and *disapproved, State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014). However, *Dixon* was disapproved by the Nebraska Supreme Court in *Vandever*, 287 Neb. 807, 844 N.W.2d at 789-90, wherein the Nebraska Supreme Court held that

> To the extent *Dixon* indicated that the heightened procedures set forth therein were to be used in connection with nontestimonial recorded evidence, it is disapproved. The procedures set forth in *Dixon* implementing § 25-1116 are applicable only when a jury has requested to have its memory refreshed regarding testimonial evidence.

Thus, the heightened standards for allowing a jury to rehear testimony that was presented in the form of an audio or video recording after the jury has retired for deliberation, which standards require the trial court to weigh the probative value of the testimony against the danger of undue emphasis, and allow the court to strictly control the procedures for the jury's review of tape-recorded evidence, apply only to testimonial evidence. *State v. Vandever, supra.* Testimonial evidence refers to trial evidence, including live oral examinations, affidavits and depositions in lieu of live testimony, and tapes of examinations conducted prior to the time of trial for use at trial in accordance with procedures provided by law. *State v. Vandever, supra.*

This court applied *Vandever* in *State v. Cheloha*, 25 Neb. App. 403, 907 N.W.2d 317 (2018). In *Cheloha*, this court held that the jury was permitted to have unrestricted access to a video recording of the police interrogation of the defendant, which had been received into evidence and played during the trial. Because the video was substantive, nontestimonial evidence, the court was not required to weigh the danger of the jury placing undue emphasis on the video before allowing access to it. This court noted that "although verbal in nature, the recording was not prepared as or admitted into evidence as a substitute for live testimony at trial. Therefore, the trial court had broad discretion in allowing the jury to have unlimited access to the exhibit during deliberations." *State v. Cheloha*, 25 Neb. App. at 408, 907 N.W.2d at 326. See, also, Neb. Rev. Stat. § 25-1116 (Reissue 2016).

Similarly, in the instant case, although the 911 calls were verbal, they were not prepared as or admitted into evidence as a substitute for live testimony at trial. Thus, the calls were not testimonial; rather, they were substantive evidence of Spencer's guilt of the offenses of terroristic threats and use of a firearm to commit a felony. Accordingly, the district court was not required to weigh the danger of the jury placing undue emphasis on the 911 calls before allowing access to them and the court did not abuse its discretion in allowing the jury to have unlimited access to the exhibit during deliberations. This assignment of error fails.

### 4. INSUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTIONS

Spencer's fourth assignment of error is that the evidence was insufficient to support his convictions for terroristic threats and use of a firearm to commit a felony. He does not challenge the sufficiency of the evidence to support his two convictions for second offense possession of a firearm by a prohibited person.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Keadle*, 311 Neb. 919, 977 N.W.2d 207 (2022). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Spencer argues that the evidence was insufficient to support his convictions for terroristic threats and use of a firearm to commit a felony because Ellis did not testify and no other witnesses testified to witnessing the shooting, he denied threatening Ellis or shooting at her, and there was no evidence "that any bullets struck anything near where Ellis would have been." We disagree.

As charged in the instant case, a defendant commits terroristic threats if he threatens to commit any crime of violence with the intent to terrorize another. Neb. Rev. Stat. § 28-311.01(1)(a) (Reissue 2016). The intent to terrorize another, for purposes of the crime of terroristic threats, is an intent to produce intense fear or anxiety in another. *State v. Bryant*, 311 Neb. 206, 971 N.W.2d 146 (2022). For purposes of § 28-311.01, a threat may be written, oral, physical, or any combination thereof. *Id*.

- 8 -

Whether a particular conduct constitutes a threat depends on the context of the interaction between the people involved. *Id.* Section 28-311.01 does not require that the recipient of the threat be actually terrorized, and it does not require an intent to execute the threats made. *State v. Bryant, supra*. See, *State v. Oldenburg*, 10 Neb. App. 104, 628 N.W.2d 278 (2001) (concluding that because pointing gun at person can constitute criminal assault, pointing of gun can be threat to commit crime of violence); *State v. Green*, No. A-23-085, 2023 WL 5598695 (Neb. App. Aug. 29, 2023), *review denied* (Nov. 20, 2023) (pointing gun at person with either intent to terrorize or in reckless disregard of risk of causing such terror constitutes threat to commit crime of violence); *State v. Rowe*, No. A-16-1050, 2017 WL 4512244 (Neb. App. Oct. 10, 2017) (evidence that after individual yelled for defendant to "show them the gun," defendant reacted by lifting his shirt, facing in direction of loss prevention officers, to display handle of object which had been tucked in his waistband was sufficient evidence to support conviction for terroristic threats). The pointing of a gun by itself might constitute a terroristic threat. *State v. Tillman*, 1 Neb. App. 585, 511 N.W.2d 128 (1993).

A defendant commits use of a deadly weapon to commit a felony when he uses a firearm to commit a felony. Neb. Rev. Stat. § 28-1205 (Reissue 2016). We note that § 28-1205 was amended effective September 2, 2023, which was after the commission of the offense in this case.

Viewing the evidence in the light most favorable to the State, which we are required to do, the evidence established that during the 911 call, Ellis stated that Spencer pulled a gun on her, that Spencer was driving away in a black Lincoln car with in-transit tags on the front and back, and that Spencer fired his gun at Ellis. The shots could be heard on the 911 call. One of the guns recovered from Spencer's apartment, and shell casings found in Spencer's car, matched the shell casings found at the scene. Spencer admitted that he owned the 9-millimeter firearm and ammunition located in his apartment; that shell casings located in his black Lincoln car came from his 9-millimeter firearm; and that shell casings found at the location of the incident matched his 9-millimeter firearm. Although Spencer denied shooting at Ellis, this was a credibility determination for the jury which found against Spencer and convicted him of terroristic threats and use of a firearm to commit a felony. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Keadle*, 311 Neb. 919, 977 N.W.2d 207 (2022). Having reviewed the evidence in the light most favorable to the State, the evidence was sufficient to support Spencer's convictions. Accordingly, this assignment of error fails.

## 5. EXCESSIVE SENTENCES

Spencer's final assignment of error is that the district court abused its discretion in imposing excessive sentences. Specifically, he contends that the court abused its discretion in imposing a consecutive sentence for the second conviction of possession of a deadly weapon by a prohibited person "given the gun was lying loaded on the top shelf of his closet and not alleged to have been used in the events pertaining to Ellis on August 23, 2022." Brief for appellant at 22.

Here, Spencer was convicted of use of a deadly weapon to commit a felony, a Class IC felony; and two counts of second offense possession of a deadly weapon by a prohibited person, both Class IB felonies; and terroristic threats, a Class IIIA felony. For use of a deadly weapon to

commit a felony, Spencer was sentenced to 20 to 21 years' imprisonment which is within the statutory sentencing range for Class IC felonies which are punishable by a mandatory minimum of 5 years' imprisonment and a maximum of 50 years' imprisonment. See, Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022) (felonies; classification of penalties).

For both convictions for second offense possession of a firearm by a prohibited person, Spencer was sentenced to 20 to 21 years' imprisonment for each conviction which is within the statutory sentencing range for Class IB felonies which are punishable by a minimum of 20 years' imprisonment and a maximum of life imprisonment. See, Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Cum. Supp. 2022); § 28-1205. Spencer does not argue that the sentences were not within the applicable statutory sentencing ranges. Instead, he claims that the court abused its discretion in running these sentences consecutively.

The presentence investigation report noted that Spencer was 36 years old, single, with three minor children. He completed the 11th grade. His criminal history includes seven convictions for operating a vehicle during suspension; three convictions for possession of marijuana (less than 1 oz.); two convictions each for robbery and disorderly conduct; and single convictions for resisting a peace officer, minor in possession, domestic assault by strangulation, violation of a domestic abuse no contact order, closed property violation, failure to appear, obstructing a peace officer, assault and battery, third degree assault, weapon concealment, and possession of a deadly weapon by a prohibited person. In addition to these convictions, Spencer also had various other traffic and other minor convictions. The level of service/case management inventory assessed Spencer as a very high risk to reoffend and the domestic violence offender matrix assessed Spencer as a high risk to reoffend. Spencer has admitted that he involved himself with gang members in the past and he continues to deny that he committed the offenses for which he was convicted.

Based upon factors including that the sentences imposed were within the relevant statutory sentencing ranges, his criminal history, his high to very high risk to reoffend, and his failure to accept responsibility for the offenses, the sentences imposed, including the court's decision to run the sentences consecutively, was not an abuse of discretion. See, also, *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017) (it is within discretion of trial court to impose consecutive rather than concurrent sentences for separate crimes).

For Spencer's terroristic threats conviction, he was sentenced to 3 years' imprisonment which is within the statutory sentencing range for Class IIIA felonies which are punishable by a minimum of no imprisonment and maximum of 3 years' imprisonment followed by 9 to 18 months' post-release supervision and/or a $10,000 fine. See, Neb. Rev. Stat. § 28-311.01 (Reissue 2016); § 28-105. However, we find plain error regarding Spencer's terroristic threats conviction because terroristic threats is a Class IIIA felony and Spencer was sentenced to consecutive sentences of imprisonment for a Class IC felony and two Class IB felonies. Neb. Rev. Stat. § 29-2204.02 (Reissue 2016) required that the court impose an indeterminate sentence not to include a period of post-release supervision. Accordingly, we vacate Spencer's sentence for terroristic threats and remand to the district court for resentencing on this conviction. See *State v. Serrano*, 32 Neb. App. 697, 4 N.W.3d 517 (2024).

## VI. CONCLUSION

In sum, having rejected Spencer's assigned errors, we affirm his convictions. We likewise affirm Spencer's sentences with the exception of the sentence imposed for terroristic threats. Pursuant to plain error, we find that Spencer's sentence for terroristic threats required that the district court impose an indeterminate sentence not to include a period of post-release supervision. Accordingly, we vacate Spencer's sentence for terroristic threats and remand for resentencing solely on that offense.

AFFIRMED IN PART, AND IN PART VACATED AND REMANDED FOR RESENTENCING.