Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/29/2026 08:09 AM CDT

State of Nebraska, appellee, v. Keiandre T. Kellogg, appellant.

___ N.W.3d ___

Filed May 29, 2026.    No. S-25-310.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Effectiveness of Counsel: Appeal and Error.** Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision.

3. **Postconviction: Right to Counsel: Appeal and Error.** An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.

4. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.

5. **Postconviction: Constitutional Law: Proof.** Under the Nebraska Postconviction Act, an evidentiary hearing is not required when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.

6. **Effectiveness of Counsel: Proof.** In order to establish a right to post-conviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case.

7. ____: ____. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.

8. **Effectiveness of Counsel: Proof: Words and Phrases.** To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

9. **Trial: Pleas: Mental Competency.** A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

10. **Trial: Mental Competency.** The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding.

11. **Mental Competency.** There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies.

12. **Effectiveness of Counsel: Mental Competency: Proof.** In order to demonstrate prejudice from counsel's failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted.

13. **Postconviction: Right to Counsel.** Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant.

14. **Postconviction: Justiciable Issues: Right to Counsel: Appeal and Error.** Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable

issue of law or fact, it is not an abuse of discretion to fail to appoint postconviction counsel for an indigent defendant.

Appeal from the District Court for Douglas County: Todd O. Engleman, Judge. Affirmed.

Keiandre T. Kellogg, pro se.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

Funke, C.J., Cassel, Stacy, Papik, and Freudenberg, JJ., and Hall and Smith, District Judges.

Freudenberg, J.

## INTRODUCTION

Keiandre T. Kellogg, appealing pro se, argues that the district court erred when it denied his motion for postconviction relief without an evidentiary hearing. Specifically, Kellogg argues that the district court erred in finding that the allegations in his motion were not sufficient to demonstrate that his counsel was ineffective for failing to raise a competency defense. Relatedly, Kellogg argues the district court erred in failing to appoint counsel to represent him in the postconviction proceedings.

## BACKGROUND

### Initial Charges and Pleas

In August 2018, Kellogg was charged with first degree murder, a Class IA felony; use of a deadly weapon (firearm) to commit a felony, a Class IC felony; and possession of a deadly weapon by a prohibited person, a Class ID felony. The charges stem from an incident in June 2018 where Kellogg approached a man at a service station in Omaha, Nebraska; drew a pistol; and shot and killed the man.

In September 2019, pursuant to a plea agreement, the State filed an amended information reducing Kellogg's first degree

murder charge to second degree murder, a Class IB felony. Pursuant to the amended information, Kellogg pled guilty to all three charges.

The court held a plea hearing where it conducted a plea colloquy with Kellogg. The court asked Kellogg if he had "ever been treated for a mental illness of any kind," to which Kellogg responded, "No." Kellogg also answered that he was not suffering from any kind of mental or emotional disorder.

The court advised Kellogg of the constitutional protections he would give up by entering the guilty pleas; Kellogg said he understood that he was giving up these rights by pleading guilty.

The court confirmed that Kellogg understood each of the three charges against him before explaining the penalties for each offense. Kellogg responded that he understood the possible penalties for each offense: up to life in prison for second degree murder, a minimum term of 5 years and maximum term of 50 years in prison for use of a deadly weapon (firearm) to commit a felony, and a minimum term of 3 years and maximum term of 50 years in prison for possession of a deadly weapon by a prohibited person.

Kellogg acknowledged that he had fully discussed the case with his attorneys and was satisfied with their representation. Kellogg stated that he did not agree with the State's factual basis, but he conceded that he shot the victim in Douglas County, Nebraska, and that he did so intentionally but without premeditation.

The court found that Kellogg voluntarily, knowingly, and intentionally entered the guilty pleas. The court therefore found Kellogg guilty on all three charges.

## Sentencing

In December 2019, Kellogg was sentenced. At the sentencing hearing, the court received a letter from Kellogg's counsel and a sentencing memorandum from the State. The court heard

arguments from counsel on both sides and heard from the victim's mother.

The letter from Kellogg's counsel, exhibit 1, detailed Kellogg's family history of mental illness, including his father's and paternal grandmother's suffering from paranoid schizophrenia. The letter stated that Kellogg's mother "has suspected schizophrenia since [Kellogg] was 13 years old and experienced extreme mood swings." The letter further explained that Kellogg was shot in 2012 and that "[i]t would not be a stretch to believe that he suffers from severe [post-traumatic stress disorder]." Kellogg's attorney also shared reports from Kellogg's girlfriend and family concerning Kellogg's mental health, including his becoming angry quickly, being "seriously depressed," hearing voices, and locking himself in a bathroom with a knife.

Based on these reports and observations, Kellogg's attorney shared his assertion that mental health played a role in Kellogg's actions in this case and asked the court for a lower sentence. Kellogg's attorney referenced the presentence investigation report, which he stated showed that Kellogg exhibited symptoms consistent with "schizophrenia, depressive disorder, manic episodes, panic disorder, a learning disorder, and even mental retardation." Further, Kellogg's attorney noted that the probation officer wrote that a consultation with a mental health specialist was "st[r]ongly recommended."

The State argued at the sentencing hearing that this was the first time mental illness was brought up and that Kellogg did not plead not guilty by reason of insanity.

After considering the evidence and arguments presented, the court announced Kellogg's sentence. On count 1, second degree murder, Kellogg was sentenced to 70 years' to life imprisonment. On count 2, use of a deadly weapon (firearm) to commit a felony, Kellogg was sentenced to 20 to 30 years' imprisonment. On count 3, possession of a deadly weapon by a prohibited person, Kellogg was sentenced to 5 to 10 years' imprisonment.

## Direct Appeal

Kellogg appealed his sentences with the assistance of trial counsel, asserting that his sentences were excessive. Kellogg did not argue on direct appeal that he was incompetent to stand trial or plead but did argue that the trial court failed to consider his mental health issues as a mitigating factor in his sentences. His sentences were summarily affirmed on appeal in June 2020.

## Motion for Postconviction Relief

Kellogg, pro se, timely moved for postconviction relief. Kellogg asserted that his convictions were in violation of his 5th, 6th, and 14th Amendment rights guaranteed by the U.S. Constitution and the Nebraska Constitution. Specifically, Kellogg asserted that he was denied his Sixth Amendment right to effective assistance of counsel. Kellogg argued his trial counsel was ineffective for failing to file a motion to quash the information due to a date defect, failing to advise him of a competency defense and present a competency defense to the court, failing to interview witnesses who may have supported a self-defense claim, and withholding from him important information about a possible self-defense claim. Trial counsel's failure to file a motion to quash and pursue a self-defense claim are not raised on appeal.

In March 2025, the district court denied Kellogg's motion for postconviction relief. The court found that an evidentiary hearing was not needed on Kellogg's motion for postconviction relief, because the court determined that "the records and files of the case show that [Kellogg] is entitled to no relief or that his allegations are insufficient to entitle him to relief."

The court found that the records and files affirmatively showed Kellogg's trial counsel was not ineffective by failing to advise him of an incompetency defense, because the allegations in his motion were not sufficient to demonstrate a reasonable probability that he was, in fact, incompetent and the trial court would have found him incompetent had a competency

hearing been conducted. The court explained that a person is competent to plead if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.

The court relied heavily on our decision in *State v. Harms*,[1] a case the court found to be similar in nature to Kellogg's case. The assertion that Kellogg potentially suffered from mental health issues, the court explained, did not provide a basis for showing that he was incompetent to stand trial at the time of his pleas and at sentencing. The court also noted that Kellogg's responses to the plea colloquy suggested he was oriented and understood the proceedings at that time. The court ultimately found that Kellogg's allegations were insufficient to demonstrate a reasonable probability that he was incompetent; therefore, the court found he failed to properly allege he was prejudiced by his trial counsel's failure to raise a competency defense. As a result, the court denied Kellogg relief on his motion for postconviction relief on the grounds that his trial counsel was ineffective for failing to raise and pursue a competency defense without an evidentiary hearing.

Kellogg appeals. In his praecipe for transcript, Kellogg requested two separate motions for the appointment of counsel to be part of the record on appeal. An employee of the district court clerk's office noted that the motions were requested but were not part of the record.

## ASSIGNMENTS OF ERROR

Kellogg, appealing pro se, asserts, restated and consolidated, that the district court erred in (1) denying his motion for postconviction relief on the grounds of ineffective assistance of counsel without an evidentiary hearing and (2) denying him the appointment of counsel during the postconviction proceedings.

---

[1] *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[2]

[2] Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact.[3] When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error.[4] With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*,[5] an appellate court reviews such legal determinations independently of the lower court's decision.[6]

[3] An appellate court reviews the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion.[7]

## ANALYSIS

On appeal, Kellogg asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing and without appointing counsel during the postconviction proceedings. Kellogg's motion for postconviction relief alleged, as relevant here, that his trial counsel was ineffective for failing to pursue a competency defense. For the reasons that follow, we disagree with Kellogg's arguments.

---

[2] *State v. Trail*, 319 Neb. 84, 21 N.W.3d 61 (2025), *cert. denied* No. 25-6512, 2026 WL 1052085 (U.S. Apr. 20, 2026).

[3] *State v. Keadle*, 320 Neb. 583, 28 N.W.3d 524 (2025).

[4] *Id.*

[5] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[6] *State v. Keadle, supra* note 3.

[7] *State v. Cox*, 314 Neb. 104, 989 N.W.2d 65 (2023).

## Denial of Motion for Postconviction Relief
### Without Evidentiary Hearing

Kellogg asserts that the district court erred in denying his motion for postconviction relief without an evidentiary hearing. Kellogg specifically argues the district court erred by finding that his trial counsel was not ineffective for failing to pursue a competency hearing before he pled guilty pursuant to the plea agreement.

[4,5] Under our postconviction statutes, defendants in custody under sentence "may file a verified motion, in the court which imposed such sentence, stating the grounds relied upon and asking the court to vacate or set aside the sentence."[8] In Nebraska, postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations that render the judgment void or voidable.[9] The Nebraska Postconviction Act requires a court to grant a prompt hearing on a motion for postconviction relief "[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief . . . ."[10] Under this standard, an evidentiary hearing is not required when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights rendering the judgment void or voidable; (2) the motion alleges only conclusions of fact or law without supporting facts; or (3) the records and files affirmatively show that the defendant is entitled to no relief.[11]

[6-8] In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland*, to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or

---

[8] See Neb. Rev. Stat. § 29-3001(1) (Cum. Supp. 2024).

[9] *State v. Lotter*, 311 Neb. 878, 976 N.W.2d 721 (2022).

[10] See § 29-3001(2).

[11] *State v. Lotter, supra* note 9.

her case.[12] To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[13] To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[14] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[15]

[9-12] We have said that a person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense.[16] The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding.[17] There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies.[18] In order to demonstrate prejudice from counsel's failure to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found the defendant incompetent had a competency hearing been conducted.[19]

---

[12] *State v. Keadle, supra* note 3.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *State v. Harms, supra* note 1.

[17] *Id.*

[18] *Id.*

[19] *State v. Baker*, 286 Neb. 524, 837 N.W.2d 91 (2013).

In *Harms*, which the district court relied on here, we affirmed the denial of a motion for postconviction relief without an evidentiary hearing.[20] The defendant in *Harms* asserted that he received ineffective assistance of counsel in part for failure to investigate and assert a competency defense.[21] The Nebraska Court of Appeals affirmed the denial of the defendant's motion for postconviction relief without an evidentiary hearing, finding that the defendant had made generalized allegations regarding his mental health, including alcoholism, depression, post-traumatic stress disorder, and a history of suicide attempts but that he had failed to make factual allegations sufficient to tie his alleged medical issues to a lack of competency.[22] On further review, we affirmed, finding: "Although [the defendant] made allegations regarding his mental history, he made no allegations that show that the conditions from which he had suffered prevented him from being competent to stand trial in the sense of being able to understand the proceedings and assist in his defense."[23]

Here, the plea colloquy demonstrates Kellogg had a rational as well as a factual understanding of the proceedings against him and had sufficient present ability to consult with his trial counsel with a reasonable degree of rational understanding. The trial court inquired into whether Kellogg understood his plea options and his constitutional rights to a jury trial, whether he had ever been treated for mental illness, and whether he was suffering the effects of any kind of mental or emotional disorder. Kellogg's answers to each of these inquires satisfied the trial court that Kellogg made his guilty pleas freely, knowingly, intelligently, and voluntarily. Kellogg also was able to express that he did not agree with the State's

---

[20] *State v. Harms, supra* note 1.

[21] *Id.*

[22] *State v. Harms*, No. A-22-393, 2023 WL 2656390 (Neb. App. Mar. 28, 2023) (selected for posting to court website).

[23] *State v. Harms, supra* note 1, 315 Neb. at 457, 996 N.W.2d at 867.

factual basis, but agreed to the basic facts underlying his charges and, ultimately, guilty pleas.

Further, Kellogg does not show that there was a reasonable probability he would have been found incompetent had a competency hearing been requested by his trial counsel. Much like the defendant in *Harms*, Kellogg makes generalized allegations about his family history of mental health issues and vague possibilities that he may suffer from conditions such as schizophrenia, depression, and post-traumatic stress disorder. None of Kellogg's allegations show that the conditions from which he may or may not have suffered prevented him from being competent to plead guilty. In short, Kellogg has not made sufficient allegations to show that he had a viable competency defense. Accordingly, Kellogg cannot show his counsel was ineffective for failing to request a competency hearing.

We see no error in the district court's denial of Kellogg's motion for postconviction relief without an evidentiary hearing. Kellogg's allegations failed to tie his potential mental health issues to a lack of competency at the time he entered the guilty pleas. As such, the district court did not err in denying Kellogg's motion for postconviction relief without an evidentiary hearing.

### Failure to Appoint Counsel for Postconviction Hearing

[13,14] Kellogg also claims the district court erred when it denied him the appointment of counsel for the postconviction proceedings. Under the Nebraska Postconviction Act, it is within the discretion of the trial court to decide whether counsel shall be appointed to represent the defendant.[24] Where the alleged errors in the postconviction petition before the district court are either procedurally barred or without merit, thus establishing that the postconviction proceeding contained no justiciable issue of law or fact, it is not an abuse

---

[24] *State v. Cox, supra* note 7.

of discretion to fail to appoint postconviction counsel for an indigent defendant.[25] Because we have determined that Kellogg's motion for postconviction relief contained no justiciable issue of law or fact, the district court did not abuse its discretion by failing to appoint Kellogg with counsel for the postconviction proceedings.

## CONCLUSION

For the foregoing reasons, the district court's denial of Kellogg's motion for postconviction relief without an evidentiary hearing is affirmed.

Affirmed.

Bergevin and Vaughn, JJ., not participating.

---

[25] *Id.*